### GENERAL AMERICAN INVESTORS CO., Inc.,

### v.

### COMMISSIONER OF INTERNAL REVENUE.

### No. 29, Docket 22718.

United States Court of Appeals Second Circuit.

Argued Feb. 9, 1954.

Decided March 9, 1954.

Norris Darrell, John F. Dooling, Jr., and Robert A. McDowell, New York City, Sullivan & Cromwell, New York City, of counsel, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Morton K. Rothschild, Sp. Asst. to Atty. Gen., for respondent.

Before CHASE, Chief Judge, and AUGUSTUS N. HAND and MEDINA, Circuit Judges.

MEDINA, Circuit Judge.

The appeal in this case involves a deficiency in income tax for the calendar year 1948 in the amount of $57,-922.55. In compliance with Section 30 (f) of the Investment Company Act of 1940, 15 U.S.C.A. § 80a–29, and Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b), a director, and a stockholder owning more than 10% of the outstanding warrants for the purchase of petitioner's stock, who had

realized profits in the respective sums of $81,092.33 and $129,362.95, paid these sums into the treasury of petitioner, as they were so-called "short-swing profits" realized by an "insider" within the meaning of said Section 16(b), as construed and applied in Smolowe v. Delendo Corp., 2 Cir., 1943, 136 F.2d 231, 148 A.L.R. 300, certiorari denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.

Under similar circumstances moneys thus received by a corporation were held by the Court of Claims to be "gains or profits and income derived from any source whatever", within the meaning of Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Park & Tilford Distillers Corp. v. United States, D.C., 107 F.Supp. 941, certiorari denied 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1350.

Petitioner relies principally upon the following definition of income contained in the opinion of the Supreme Court in the stock dividend case of Eisner v. Macomber, 1920, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521:

> " 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets * * *."

If this definition is to be regarded as all inclusive, and to be applied literally, it does not reach the payments to petitioner with which we are now concerned. And the range of discussion in the briefs and oral arguments before us has covered many situations said to be analogous, including tort recoveries of punitive or exemplary damages in defamation cases, two-thirds of the triple damage awards

in private antitrust suits, so-called "penalties" imposed upon faithless fiduciaries and others.[1]

Is there some common principle or touchstone by the application of which one may infallibly determine what is and what is not in a given case "gains or profits and income derived from any source whatever"? We think not. The old definition of Eisner v. Macomber was perhaps contrived in the hope that a final and definitive solution had been found. But by reason of the very nature of the subject matter this was not to be. The decision in Eisner v. Macomber still stands, but the definition has met the common fate of generalities, and it has long since given way to an empirical case by case approach, which has the virtue of elasticity and makes possible a more sensible solution of new problems as they arise.[2]

Policy considerations may in the end play a decisive or persuasive role in the punitive damage, antitrust and faithless fiduciary cases. For, despite the fact that the moneys received in those instances are at the free disposal of those to whom they are paid, and the rationale of such tribunals as have held them not to be "income" is based principally upon the Eisner v. Macomber definition, it may be thought by some that the public interest will be better served if such receipts are held not to be subject to the income tax. It is on some such basis that a taxpayer, who included "short-swing" profits in his gross income, has been denied deductions for payments of these same profits over to the corporations of which he was a director, officer or stockholder, as required by Section 16(b) of the Securities Exchange Act of 1934.[3]

1. See Highland Farms Corp., 1940, 42 B. T.A. 1314, Glenshaw Glass Co., 1952, 18 T.C. 860, William Goldman Theatres, Inc., 1953, 19 T.C. 637, and Central R. Co. of New Jersey v. Commissioner, 3 Cir., 1935, 79 F.2d 697, 699 where property in possession of a trustee *ex malificio* was turned over to a corporation and held not to constitute "income," as "It was a penalty imposed by the law on a faithless fiduciary, a gain granted

gratuitously because of the necessity of keeping persons in positions of trust beyond the temptation of double dealing."

2. Cf. Surrey & Warren, "A. L. I. Income Tax Project," 66 Harvard Law Rev. 761, 771 (1953). See, also, Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L. Ed. 833, rehearing denied 1952, 343 U. S. 952, 72 S.Ct. 1039, 96 L.Ed. 1353.

3. Davis, 1951, 17 T.C. 549.

However imponderable or remote or difficult of ascertainment such policy questions may be we express no opinion thereon. Perhaps they have no relevance to the problem, and the Court of Claims was right when it expressed the view that Central R. Co. of New Jersey v. Commissioner and Highland Farms Corp. (see footnote 1, supra) were wrongly decided. Park & Tilford Distillers Corp. v. United States, supra, 107 F.Supp. at page 945. In any event, no considerations of policy would seem to affect this case one way or the other, since the beneficent purpose of Section 16(b) will be served equally well whether or not these payments are held to be "income" to petitioner.

It is at least clear that the answer is not to be found in mere terminology. Thus it will not help to characterize these payments as a "windfall" to the corporation or as in the nature of a "penalty" imposed upon the director and the stockholder.

In United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, a corporation retired some of its own bonds after purchasing them at a price less than the face value, which it had received for them when issued, and it was held that the excess of the issuing price over the purchase price constituted "gains or profits and income derived from any source whatever," despite the fact that the Eisner v. Macomber definition could hardly be said to cover the case. Justice Holmes, writing for a unanimous court in that case, over ten years after Eisner v. Macomber, used these words, 284 U.S. at page 3, 52 S.Ct. at page 4:

> "We see nothing to be gained by the discussion of judicial definitions. The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here."

So now, if we consider the words "gains or profits and income derived from any source", "in their plain popular meaning," as we think they should be, how can there be any doubt that these Section 16 (b) payments are "income"?

Petitioner had unrestricted discretion to use the funds for any purpose whatsoever; they were in no sense donations or contributions to capital, or payments by way of restoration of lost capital, or compensation for any loss suffered by petitioner. Doubtless the subject in general is technical and often recourse is properly had to complicated and abstruse accounting practices; but here the issue is simplicity itself. Accordingly, we hold the sums thus received to be "income" to petitioner within the meaning of Section 22(a).

Perhaps reluctant to take a position seemingly inconsistent with prior decisions of the Tax Court, which relied heavily upon the Eisner v. Macomber definition and upon Central R. Co. of New Jersey v. Commissioner, 3 Cir., 1935, 79 F.2d 697, supra, the concurring judges below took the view that these payments were "profits," because Section 16(b) provided that "any profit realized" under the circumstances here present "shall enure to and be recoverable by the issuer." But this reasoning will not bear analysis. These payments were not "profits" to petitioner, although they represented "profits" realized by the director and the stockholder.

Petitioner's further contention that these payments were "part of the subscription price received upon issue of the stock in question" flies in the face of the realities of the stock purchase transactions, which were complete when the stock was purchased through the exercise of the warrants. No bookkeeping entries made after the receipt by petitioner of these Section 16(b) payments could alter these basic facts. It is immaterial that the stock was not purchased on the open market.

Affirmed.