**COMMISSIONER OF INTERNAL REVENUE**

v.

**GLENSHAW GLASS CO.**

**COMMISSIONER OF INTERNAL REVENUE**

v.

**WILLIAM GOLDMAN THEATRES, Inc.**
**Nos. 11073, 11150.**

United States Court of Appeals, Third Circuit.

Argued Dec. 23, 1953.

Decided April 9, 1954.

As Amended April 26, 1954.

Melva M. Graney, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Max Swiren, Chicago, Ill. (Sidney B. Gambill, Pittsburgh, Pa., Joseph D. Block, Swiren & Heineman, Chicago, Ill., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for Glenshaw Glass Co.

Samuel H. Levy, Philadelphia, Pa. (Bernard Wolfman, Philadelphia, Pa., on the brief), for Goldman Theatres.

Before BIGGS, Chief Judge, and MARIS, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The Commissioner seeks to reverse two decisions of the United States Tax Court in favor of two taxpayers. In Glenshaw a claim for punitive damages based upon a competitor's, Hartford's, fraudulent suits which disastrously affected the taxpayer's business, as well as a claim for treble damages under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, were settled by the payment of a sum of money.[1] In Goldman a judgment for treble damages was awarded Goldman against Loew's, Inc.,[2] also pursuant to Section 4 of the Clayton Act. The sole question presented for our determination is whether moneys paid as punitive or statutory treble damages are taxable as

---

1. For the history of the litigation see: Hartford-Empire Co. v. Shawkee Mfg. Co., 3 Cir., 1947, 163 F.2d 474; Hartford-Empire Co. v. Shawkee Mfg. Co., D. C.W.D.Pa.1946, 67 F.Supp. 26; Hartford-Empire Co. v. United States, 1945, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322; Hartford-Empire Co. v. Shawkee Mfg. Co., 3 Cir., 1944, 147 F.2d 532; Shawkee Mfg. Co. v. Hartford-Empire Co., 1944, 322 U.S. 271, 64 S.Ct. 1014, 88 L.Ed. 1269, reversing Hartford-Empire Co. v. Shawkee Mfg. Co., 3 Cir., 1943, 137 F.2d 764; Shawkee Mfg. Co. v. Hartford-Empire Co., 3 Cir., 1934, 68 F.2d 726; and Hartford-Empire Co. v. Hazel-Atlas Glass Co., 3 Cir., 1932, 59 F.2d 399.

2. See William Goldman Theatres, Inc. v. Loew's, Inc., 3 Cir., 1948, 164 F.2d 1021.

income under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A.[3] The Tax Court has decided that they are not and the Commissioner of Internal Revenue has petitioned this court for review.[4] Insofar as the issue before us is concerned no valid distinctions can be drawn between a money settlement and money paid in satisfaction of a judgment or between punitive damages levied for fraud and treble damages rendered under the Clayton Act.[5]

The positions of the taxpayers are based in large part upon the definition of "income" set out in Eisner v. Macomber, 1920, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521, on the decision of this court in Central R. Co. v. Commissioner, 3 Cir., 1935, 79 F.2d 697, 101 A.L.R. 1448, the decision of the Board of Tax Appeals in Highland Farms Corporation v. Commissioner of Internal Revenue, 1940, 42 B.T.A. 1314, and the applicable Treasury Regulations.[6][7] The taxpayers also assert considerations which are based on the general philosophy of income taxation but we will not discuss these specifically in this opinion. But the United States for its part contends that Eisner v. Macomber does not settle the applicable definition of what constitutes taxable income insofar as the cases at bar are concerned, that the decision of this court in the Central R. Co. case is not applicable, but if it is, it was wrongly decided, and that the decision of the Board of Tax Appeals in Highland Farms was clearly erroneous. The substance of the government's argument is that all property or money coming into the hands of a taxpayer is income except where specifically exempted by the taxing statute.

3. Section 22(a) of the Internal Revenue Code, in pertinent part, is as follows:
"*General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * "

4. The Tax Court opinions are reported at 18 T.C. 860 (Glenshaw) and 19 T.C. 637 (Goldman). See also Obear Nester Glass Co., 20 T.C. 1102, and Telefilm, Inc., 21 T.C. —, similar cases.

5. The Commissioner and Glenshaw do not now dispute that $324,529.94 was the *amount paid in settlement of punitive damages.* In the Goldman case the amount of actual damage, found to be $125,000, was trebled and a judgment was entered for $375,000. We are concerned solely with the taxability of the sum of $324,529.94 (Glenshaw) and the taxability of $250,000 (Goldman).

6. The facts of the Central R. Co. case are distinguishable from those at bar. In the Central R. Co. case the taxpayer received property in settlement of a suit brought by it against an unfaithful officer who violated his fiduciary duty to it and thereby deprived the railroad of revenues. A kind of resulting or constructive trust was imposed upon the fruits of his fraud in favor of the railroad company. Nevertheless this court considered the railroad's gain to be a "windfall", not derived either wholly or in part from the taxpayer's capital or labor and therefore not income at all within the definition of Eisner v. Macomber.

The decision was followed by the Board of Tax Appeals in Highland Farms Corporation, *supra,* where punitive damages were allowed for slander of title to land. The Board of Tax Appeals refused to treat these punitive damages as income, relying also on the test of taxable income set out in Eisner v. Macomber.

7. Treasury Regulations 111, in pertinent part provide:
"Sec. 29.22(a)–1. *What Included in Gross Income.*—Gross income includes in general compensation for personal and professional services, business income, profits from sales of and dealings in property, interest, rent, dividends, and gains, profits, and income derived from any source whatever, unless exempt from tax by law. (see section 22(b) and 116.) In general, income is the gain derived from capital, from labor, or from both combined, *provided it be understood to include profit gained through a sale or conversion of capital assets.* * * * "

In Eisner v. Macomber the Supreme Court stated [252 U.S. 189, 40 S.Ct. 193]: "'Income may be defined as a gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets * * *." In Eisner v. Macomber the Supreme Court laid emphasis on the ordinary meaning of income in common parlance and said, 252 U.S. at pages 206–207, 40 S.Ct. at page 193: "For the present purpose we require only a clear definition of the term 'income' as used in common speech, in order to determine its meaning in the amendment * * *." The second sentence of the applicable Treasury Regulations adopted the Eisner v. Macomber definition *in toto*. See note 7 of this opinion. The only qualification of the second sentence of the regulation lies in the phrase "In general" and surely little can be taken from that. Of course, as the United States points out, in Eisner v. Macomber the Supreme Court was primarily concerned with distinguishing between capital and income, not between sources of property which came into the hands of the taxpayer and we cannot doubt but that the Supreme Court has departed in some degree from the Eisner v. Macomber definition. This is apparent from United States v. Kirby Lumber Co.,[8] 1931, 284 U.S. 1, 3, 52 S.Ct. 4, 76 L.Ed. 131 where Mr. Justice Holmes stated: "We see nothing to be gained by the discussion of judicial definitions."

■ If the property or money paid represents a return of capital or a contribution to capital it is not subject to income taxation. Subsidies paid by a sovereign to aid in the construction and operation of a railroad line were held not to be income in Edwards v. Cuba R. Co., 1925, 268 U.S. 628, 45 S.Ct. 614, 69 L.Ed. 1124, and the money and property acquired were treated in effect as an accretion to capital. But compare Detroit Edison Co. v. Commissioner, 1943, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286, where the Supreme Court has indicated some halt in the doctrine of capital donation expressed in Edwards v. Cuba R. Co., supra. Cf. also Great Northern Ry. Co. v. Commissioner, 8 B.T.A. 225 (1927), affirmed 8 Cir., 1930, 40 F.2d 372. A single gift of money or property probably should not be treated as taxable income even if the specific exemption granted to gifts by statute were unavailable. Periodicity seems to be considered a factor. See Irwin v. Gavit, 1925, 268 U.S. 161, 168, 45 S.Ct. 475, 69 L.Ed. 897; Magill, Taxable Income, supra, note 8, at p. 428. The spontaneity of the gift may also serve to relieve the recipient of tax. See Bogardus v. Commissioner, 1937, 302 U.S. 34, 42, 58 S. Ct. 61, 82 L.Ed. 32; Washburn v. Commissioner, 1945, 5 T.C. 1333.[9]

The United States lays emphasis on the decision of the Court of Claims in Park & Tilford Distillers Corp. v. United States, Ct.Cls. 1952, 107 F.Supp. 941, 943–945. In this case the issue was whether a recovery under Section 16(b) of the Securities Exchange Act, 15 U.S. C.A. § 78p(b), constituted income to the recovering corporate taxpayer. The Court of Claims held that the recovery was taxable as income and specifically rejected the reasoning of this court in Central R. Co. v. Commissioner and the decision of the Board of Tax Appeals in Highland Farms. The Court of Claims stated: "The money came in from an outside source, it went into the plain-

---

8. The lumber company purchased its own bonds in the open market at less than par and the difference in price was held to be taxable as income. It is clear, however, that compensatory damages for loss of income are taxable as income and that income takes its color from source. See Chapter 10 "Compensatory Payments," Taxable Income, Magill, Rev. Ed., 1945, at p. 377 et seq.

9. Sums of money won by way of contest awards are taxable. See Robertson v. United States, 1952, 343 U.S. 711, 72 S. Ct. 994, 96 L.Ed. 1237. But these cases are readily distinguishable from a mere gift since services are rendered. Lottery prizes are also distinguishable. See Huntington v. Commissioner, 1937, 35 B.T.A. 835.

932

tiff's treasury, it did not replace something which went out of plaintiff's ownership as a consideration for it." The Court went on to say that it was unwilling to surmise that the definition of "income" of Eisner v. Macomber was sufficient to read out of the taxing statute the phrase "income derived from any source whatever." In our opinion the theory of recovery under Section 16(b) of the Securities Exchange Act of 1934 is not a purely punitive one. The statute was designed to prohibit profit being made by an "insider" possessing peculiar knowledge of future profitable operations of his corporation. The making of a profit by the "insider" is the mainspring of the statute, a profit required by law to be passed on to the corporation probably because the corporation is the most convenient receptacle. An "outsider" purchasing stock in the open market, theoretically at least, would be compelled to pay a higher price because an insider was purchasing stock in the market against him. But, under the operation of the statute, all of the stockholders, save only the "insider" whose operations were prohibited by statute, would receive via the corporate entity the profit made by the prohibited transaction.[10] We do not agree with the position of the Court of Claims that Park & Tilford's recovery was purely a "windfall".

In General American Investors Co., Inc. v. Commissioner, 1952, 19 T.C. 581, affirmed 2 Cir., 1954, 211 F.2d 522, the Tax Court followed the Park & Tilford decision of the Court of Claims but distinguished its decision from that in the

instant Glenshaw Glass Company case and the decisions in Central R. Co. and Highland Farms employing the definition of taxable income of Eisner v. Macomber. Judge Murdock in his concurring opinion pointed to the provisions of Section 16(b) of the Securities Exchange Act of 1934, viz., that "any profit realized" under the circumstances presented by the General American Investors case "shall inure to and be recoverable by the issuer", i. e., the corporation. Judge Murdock took the position that the profits were income to General American Investors within the purview of Section 22(a) of the Internal Revenue Code "since they were 'profits' either from 'sales or dealings in property * * * growing out of the ownership of * * * or interest in such property' or 'from any source whatsoever'."

The facts of the Park and Tilford and the General American Investors decisions are distinguishable both from those at bar and from Central R. Co. v. Commissioner, supra.

■ The United States contends that the "source of gain" should not be controlling in view of the final phrase of Section 22(a) dealing with gains or profits or income "derived from any source whatever"; that the phrase last quoted expresses congressional intent that the source of income or gain is immaterial—a complete negation of the concept of source in relation to taxable income. The government in substance asserts that any money or property coming into the hands of any person is taxable as income unless specifically ex-

10. The nature of Section 16(b) of the Securities Exchange Act of 1934 is referred to in 66 Harv.L.Rev. at p. 408 as follows:

"We are unaware of any other statute that offers a precise analogy to this subsection. It has within it elements of an ordinary shareholder's derivative suit for damages based upon a breach of fiduciary duty, elements of a statutory action for punitive damages, and elements of an informer's statute. It appears to proceed on the principle that the confidential information which a corporate insider auto-

matically obtains by virtue of his position belongs to the corporation. Having availed himself personally of this information, the insider is made liable to the corporation for the profits he realizes. Unlike the 'corporate opportunity' cases, however, the action may be brought even though the insider has not competed with his corporation in the use of the information. The courts have found each of these analogies useful, but none furnishes compelling authority."

empted. But we have found no case in which the court did not look to source as at least coloring or bearing upon the incidence of taxation.

■ Punitive damages seem to be *sui generis*. By definition they are not compensatory. They certainly possess no periodicity. They are not derived from capital, from labor or from both combined and assuredly they are not profit gained through the sale or conversion of capital assets. It is clear that they do not fall within the definition of Eisner v. Macomber and if we could be certain that the definition of that case was controlling we would have no difficulty with the issue at bar. It is easy to say what punitive damages are not but difficult to say what they really are. They smack of donations made to the individual by the State, by operation of law. A person does a prohibited act to another injuring him. The injured individual is subsequently enriched by a gift taken from the pocket of the injuring party by virtue of law. There is no *quid pro quo*. An analogy seems to us to lie in those cases where contributions are made by the sovereign in the general public interest to an individual. Cf. Edwards v. Cuba R. Co., supra. Where the injuries were gross, the doctrine of punitive damages comes into play. The taxpayers have recovered because the sovereign has seen fit to punish gross behavior for the good of the public. There are naked exactions by the sovereign which go to the injured corporations rather than to the fisc. There is vague likeness to a fine exacted by the sovereign but which goes to the taxpayer.

■■ The Supreme Court has never expressly departed from the definition of income of Eisner v. Macomber. In fact it has reiterated it fairly recently. See Merchants Loan & Trust Co. v. Smietanka, 1921, 255 U.S. 509, 519, 41 S.Ct. 386, 65 L.Ed. 751 and Commissioner of Internal Revenue v. Culbertson, 1949, 337 U.S. 733, 740, 69 S.Ct. 1210, 93 L.Ed. 1659. And see Helvering v. Griffiths, 1943, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843 in which the Supreme Court expressly declined to overrule Eisner v. Macomber on the facts there presented. The Culbertson decision cites not only Treasury Regulation 101, Article 22(a)–1 but also 1 Mertens, Law of Federal Income Taxation, 159 et seq. See the authorities set out in note 9 cited to § 5.02 of Mertens. We concede that no definition is too helpful, United States v. Kirby Lumber Co., supra, and that the decisions relating to income tax law contain charts rather than definitions, as Mr. Mertens has aptly stated. But it should be borne in mind that in Eisner v. Macomber, albeit where severability was the primary issue, the Supreme Court said, 252 U.S. at pages 206–207, 40 S.Ct. at page 193, that "only a clear definition of the term 'income,' as used in common speech * * *." was required. We do believe that a "windfall"—and the payments at bar were "windfalls"—would not be regarded as "income" within the terms of common speech. Certainly the payments to the taxpayers cannot fairly be regarded as products of capital or labor. We believe that the ordinary man regards income as something which comes to him from what he has done, not from something which is done to him. This is perhaps an over-simplification but we are of the opinion that the ordinary man using terms of common speech would not regard punitive damages as "income."

We must further concede that the decision of this court in Central R. Co. v. Commissioner cannot be deemed to be overwhelmingly persuasive for the sources of the moneys in that case can be distinguished from the sources of the moneys sought to be taxed in the instant cases but the decision has been followed frequently and has been applied to the issue of taxation of punitive damages. See Highland Farms, supra. There is as yet no decision which has adopted the contentions made by the Government here. The position of the United States would indeed, if adopted, bring symmetry into this aspect of the law of income taxation. See "The Taxability of

934

Punitive Damages," 101 U. of P. L. Rev. 1052 (1953). Cf. Keasbey & Mattison Co. v. Rothensies, 3 Cir., 1943, 133 F.2d 894, 897. But we think if such a result is to be achieved after nearly two decades it should be effected by the Supreme Court and not by this tribunal.

The decisions of the Tax Court will be affirmed.