**COMMISSIONER OF INTERNAL REVENUE**

v.

**OBEAR–NESTER GLASS COMPANY.**

**No. 11140.**

United States Court of Appeals Seventh Circuit.

Nov. 15, 1954.

H. Brian Holland, Asst. Atty. Gen., Tax Division, Melva M. Graney, Ellis N. Slack, Sp. Assts. to the Atty. Gen., for petitioner.

William R. MacGreevy, Henry C. Lowenhaupt, St. Louis, Mo., for respondent, Lowenhaupt, Mattingly, Chasnoff & Stolar, St. Louis, Mo., of counsel.

Before DUFFY, Chief Judge, MAJOR and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The respondent, Obear-Nester Glass Company, a Missouri corporation whose principal place of business is in Illinois, brought suit against the Hartford-Empire Company for treble damages under the federal anti-trust laws. 15 U.S.C.A. § 1 et seq. The Hartford-Empire Company eventually paid petitioner $1,000,-000 in full settlement of the claim. The parties agree that one-third of the settlement represents respondent's actual damages but not a recovery of capital, while the remainder represents punitive (treble) damages recoverable under the anti-trust laws.

Of this recovery, respondent insists that it should be required to pay income tax on only the one-third received in settlement for actual damages incurred.

The Commissioner claimed that the entire $1,000,000 was taxable as income: the amount representing punitive damages as well as that for actual damages. The Tax Court overruled the Commissioner and held that only the amount recovered for actual damages was taxable. Obear-Nester Glass Co. v. Commissioner of Internal Revenue, 20 T.C. 1102. From the Tax Court's decision the petitioner appeals to this court.

There is no dispute over the facts. The only question before us is whether or not punitive damages awarded under the federal anti-trust acts constitute gross income within the definition of that term found in Section 22(a) of the Federal Income Tax Law, 26 U.S.C.A. § 22(a).

■ Before the Sixteenth Amendment Congress could not levy a direct tax without apportionment among the states. Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, Id., 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108. The Amendment allows a tax on "income" without apportionment, but an unapportioned direct tax on anything that is not income would still, under the rule of the Pollock case, be unconstitutional.

Since 1940 the Tax Court has held that punitive damages are not income, while the Commissioner has continued to tax them as such. The Tax Court's position was originally based on Central R. Co. of New Jersey v. Commissioner of Internal Revenue, 3 Cir., 79 F.2d 697, 101 A.L.R. 1448, a case not involving punitive damages. In that case the corporate taxpayer, in a settlement of an action brought to recover profits made by a fiducial employee in transactions by him in a conspiracy to defraud the taxpayer, received more than $450,000. The court held that this recovery was not taxable as income. Its decision was based on the definition of income in Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521; that income is " 'gain derived from capital, from labor, or from both combined' ". The court in the Central Railroad case felt that the recovery there was derived from neither capital nor labor.

In Highland Farms Corporation v. Commissioner of Internal Revenue, 42 B. T.A. 1314, 1322, the Board of Tax Appeals, for the first time, held that punitive damages were not income, giving no reason other than the Central Railroad case. This holding was followed in Glenshaw Glass Co. v. Commissioner of Internal Revenue, 18 T.C. 860, 868, and William Goldman Theatres, Inc., v. Commissioner of Internal Revenue, 19 T.C. 637. These two cases were considered together and affirmed in one opinion, 3 Cir., 211 F.2d 928. On the surface the authorities seem to be unanimous that punitive damages do not constitute income, but while these cases were being decided another doctrine was becoming established.

■ In Park & Tilford Distillers Corp. v. United States, 107 F.Supp. 941, 123 Ct.Cl. 509, the United States Court of Claims held that "insider profits," awarded under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S. C.A. § 78p(b), were taxable to the recipient corporation as income. The same holding was made in General American Investors Co. v. Commissioner of Internal Revenue, 2 Cir., 211 F.2d 522. Section 16(b) of that Act provides that directors, officers or persons owning ten per centum or more of the stock of a corporation shall turn over to the corporation any profit made on any purchase and sale of stock of said corporation made within a six-month period. Its obvious purpose is to protect "outside" shareholders from "insiders" who could use their superior knowledge of and control over the corporation's future plans to make personal profits by short term dealings in its securities. To effectuate this policy the Act provides that the profits so made shall be turned over to the corporation. The prime purpose of the Act is punitive, to discourage dealings of this type by persons having inside information as to the affairs of the corporation. Clearly the purpose is not compensatory. Damage to the remaining stock is not a prerequisite to recovery.

■ In William Goldman Theatres, Inc., 19 T.C. at page 641, the court tried to distinguish these cases from the punitive damages cases by saying that " * * the taxpayer did not receive the money in payment of punitive damages, but pursuant to a statute which provided that certain profits realized by corporate insiders under circumstances there present should 'inure to and be recoverable by' the corporation." Admittedly the facts are different, but the Tax Court has not pointed to any distinction that would justify a difference in treatment as to taxation of the two types of gain. On appeal the Court of Appeals also tried to distinguish the two doctrines. Commissioner of Internal Revenue v. Glenshaw Glass Co., and Commissioner v. William Goldman Theatres, Inc., 3 Cir., 211 F.2d 928, 932. The court cited the concurring opinion of Judge Murdock in General American Investors Co. v. Commissioner, 19 T.C. 581, 587, which pointed to the language of Section 16(b) saying that "any profit realized" shall be paid to the corporation. Judge Murdock apparently considered "insider profits" taxable, not as windfalls, but as "profits." The respondent, in effect, makes the same argument when he claims that Section 16(b) operates on a trust fiction. The fallacy in this contention was clearly shown in the opinion on the appeal, General American Investors Co. v. Commissioner, 2 Cir., 211 F.2d 522, 524. The court there said:

> "Perhaps reluctant to take a position seemingly inconsistent with prior decisions of the Tax Court, which relied heavily upon the Eisner v. Macomber definition and upon Central R. Co. of New Jersey v. Commissioner [citation], the concurring judges below took the view that these payments were 'profits,' because Section 16(b) provided that 'any profit realized' under the circumstances here present 'shall inure to and be recoverable by the issuer.' But this reasoning will not bear analysis. These payments were not 'profits' to petitioner, although they represented 'profits' realized by the director and the stockholder."

We agree with the Second Circuit that awards under Section 16(b) do not represent profits to the corporation which receives them.

We are unable to reconcile the taxability of "insider profits" with the nontaxability of punitive damages. We could, of course, point out the factual difference between the two situations, but we are unwilling to rest a decision on words alone when they express no rational distinction for purposes of taxation. As a result, we can only view the problem presented by this appeal as one upon which the authorities are in conflict.

■ The respondent contends that a tax on punitive damages would be unconstitutional because punitive damages are not income and, thus, not within the Sixteenth Amendment. The first question is: which definition of income is controlling, that of Congress or that of the Supreme Court? Since the judiciary is traditionally charged with the responsibility of interpreting the Constitution, we shall assume, for the purposes of this decision only, that, because the Sixteenth Amendment is limited to income, Congress may not tax directly without apportionment that which the Supreme Court does not so define.

The conflict centers around two different interpretations of the definition of income in Eisner v. Macomber, supra. In Central R. Co. of New Jersey v. Commissioner, 3 Cir., supra, the case upon which the nontaxability of punitive damages is based, the court treated the definition as if the Supreme Court had intended it to be all inclusive. Since the gain involved in that case did not fall within the definition it could not be income and was, therefore, not taxable. In General American Investors Co. v. Commissioner, 2 Cir., supra, the court thought that the Supreme Court did not intend that the definition be all inclusive. The court there admitted that the gain involved did not fall within the Eisner definition but it nevertheless held that it was taxable income.

In Eisner v. Macomber the Supreme Court was faced with the problem of distinguishing between a capital gain and income derived from capital. Having made the distinction the Court wanted to establish which was taxable and which was not. For this purpose it looked to a definition in Webster's International Dictionary, which had already been repeated in two cases, that income was gain derived *from* capital or labor. The Court was not primarily interested in defining income according to its source, but wanted to show that income attributable to capital must be derived *from* capital, and, therefore, an increase in capital which could not be separated from it was not income. The borrowed definition served its purpose in separating the gain attributable to capital which was taxable as income from that which was not.

In Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864, the Court refused to treat the Eisner v. Macomber definition as all inclusive. In that case a landlord was taxed for the increased value of repossessed land on which the tenant had put a building. Citing Eisner v. Macomber, 309 U.S. at pages 468–469, note 8, 60 S.Ct. at page 634, the Court said:

"* * * These expressions however, were used to clarify the distinction between an ordinary dividend and a stock dividend. They were meant to show that in the case of a stock dividend, the stockholder's interest in the corporate assets after receipt of the dividend was the same as and inseverable from that which he owned before the dividend was declared. We think they are not controlling here."

In James F. Waters, Inc., v. Commissioner of Internal Revenue, 9 Cir., 160 F.2d 596, 597, the court also interpreted the definition as covering only part of income.

"The final argument on this phase is that the insurance proceeds constitute an indemnification of the taxpayer for the loss of its president, and are not income within the in-

tendment of the Sixteenth Amendment. Eisner v. Macomber [citation] is relied on as authority. While that decision has displayed an unexpected vitality within the limits of its particular facts, the lower federal courts would hardly be justified in extending its doctrine to wider fields."

After Eisner v. Macomber the Board of Tax Appeals itself said in Hawkins v. Commissioner of Internal Revenue, 6 B.T.A. 1023, 1024:

"* * * Whether this description of income [the Eisner v. Macomber definition] is to be regarded as exclusive of everything not clearly within its terms, so that both the Sixteenth Amendment and the statute (which is said to be the fullest exercise of the constitutional power [citations]) are forever to be limited by a judicial definition, may still be doubtful, for the Supreme Court is not in the habit of defining words abstractly, but only for the purpose of determining whether the matter then under consideration comes within their fair intendment. * * * there may be cases in which taxable income will be judicially found although outside the precise scope of the description already given."

In Magill, Taxable Income, at page 67, the author speaks of Eisner v. Macomber as "a futile attempt to confine a term that must remain elastic." This criticism is justified only if the Court in that opinion intended that its definition be all encompassing.

■ We feel, as do the courts cited above, that the Supreme Court in Eisner v. Macomber was merely borrowing a definition of income to support its holding that income attributable to capital must come from it, *i. e.*, be separately expendable, and that it did not consider that definition all encompassing. Even as to income derived from capital the Eisner case has been limited to its specific facts. Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864; Koshland v. Helvering, 298 U.S. 441, 56

S.Ct. 767, 80 L.Ed. 1268. In Helvering v. Griffiths, 318 U.S. 371, 375, 63 S.Ct. 636, 639, 87 L.Ed. 843, the Court, speaking of the Koshland case, supra, said:

"She argued that her dividend, notwithstanding Eisner v. Macomber, to which she gave a narrow reading, was constitutionally taxable as income at the time received. The Court held unanimously and squarely that the dividend in question did constitute income within the Sixteenth Amendment, and in effect limited Eisner v. Macomber to the kind of dividend there dealt with."

 We do not believe that the Supreme Court intended to define income exclusively according to its source. The great argument which resulted in this country's adoption of an income tax, and the fundamental principle upon which that tax is still based, is that individuals will be taxed according to their ability to pay. Cole v. Commissioner of Internal Revenue, 9 Cir., 81 F.2d 485, 487, 104 A.L.R. 420. See Mertens, Law of Federal Income Taxation, Section 1.03, especially note 38. There is no rational connection between the source of the taxpayer's gain and his ability to pay. The question is: has he realized an economic gain, from whatever source, which leaves him better able to contribute to the support of his government?

Of course, gains from some sources are not taxable, but the reason is not that they do not constitute income, but rather that either the Constitution or Congress forbids the collection of the tax on income from those particular sources.

If gain not derived from capital or labor is excluded from taxation, the burden on income that is derived from these sources, will of course, be all the greater. We feel, as did the Court of Claims in Park & Tilford Distillers Corp. v. United States, 107 F.Supp. 941, 942, 123 Ct.Cl. 509, that: "If Congress were to select one kind of receipt of money which, above all others, would be a fair mark for taxation, it might well be 'windfalls.'" There can be no question that the punitive damages recovered by

the respondent here greatly enhanced its ability to pay. Realizing that one reason for the adoption of the Sixteenth Amendment was to place the burden of taxation according to the ability to pay, we cannot believe that the term "income" as used in that Amendment was not intended to include the type of gain involved here.

There can be little doubt that Congress intended to include the punitive damages, here involved, in income if it had the constitutional power to do so. Section 22(a) of the Internal Revenue Code provides:

" 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, *or gains or profits and income derived from any source whatever.*" 26 U.S. C.A. § 22(a). (Emphasis added.)

The Supreme Court has said that Congress in defining "gross income" in Section 22(a) intended to use its taxing power to its fullest measure. Helvering v. Clifford, 309 U.S. 331, 337, 60 S.Ct. 554, 84 L.Ed. 788.

 The respondent suggests that by allowing the taxation of treble damages awarded under the anti-trust acts, we would be defeating Congress' attempt to encourage the prosecution of violators of these acts. The first answer to this contention is that once it is established that the award involved here is income and comes within the coverage of Section 22(a), Congress must specifically provide for its exclusion or deduction by statute if it so desires. We might further say that the principal purpose of treble damages seems to be punishment which will deter the violator and others from future illegal acts. Com-

pensation for actual damages is enough to encourage legal action, not, to mention the substantial amount of punitive damages the injured party still retains after taxes are paid.

Respondent's argument works against it, for if, as respondent suggests, punitive damages were intended principally to encourage the uncovering of anti-trust violators, then it might be said that the taxpayer "earned" the punitive damages by prosecuting the action for the recovery. If this interpretation were made, the punitive damages here would fall within the Eisner v. Macomber definition as gain derived from labor.

We believe that the award involved here is included in "income" as used in the Sixteenth Amendment, and that Congress has covered it in Section 22(a) of the Internal Revenue Code.

The decision of the Tax Court is, therefore, reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.