**DISTRICT OF COLUMBIA, Petitioner,**

v.

**Hyman GOLDMAN and Yetta D. Goldman, et al., Respondents.**

**Hyman GOLDMAN and Yetta D. Goldman, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

**Nos. 17352, 17354.**

United States Court of Appeals District of Columbia Circuit.

Argued May 24, 1963.

Decided Dec. 26, 1963.

Petition for Rehearing en Banc in No. 17352 Denied Feb. 17, 1964.

---

2. Ch. 854, 31 Stat. 1200.

3. See Act of June 25, 1936, ch. 804, 49 Stat. 1921, as amended, Act of May 24, 1949, ch. 139, § 32(b), 63 Stat. 107.

Washington, Circuit Judge, dissented.

Mr. Werner Strupp, Washington, D. C., with whom Mr. Nathan Sinrod, Washington, D. C., was on the brief, for petitioners in No. 17354 and respondents in No. 17352.

Mr. Henry E. Wixon, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Harrison S. Howes, Asst. Corp. Counsel, were on the brief, for petitioner in No. 17352 and respondent in No. 17354.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

The Tax Court here decided that certain distributions of net earnings by the named corporations were dividends subject to tax. It also held that yet other amounts of depreciation reserves distributed to the petitioner-stockholders were capital distributions and nontaxable. We agree with the result reached and the treatment set forth in the opinion of the Tax Court.[1]

We could affirm without more were it not for the suggestion that a distribution of depreciation reserves is income to the stockholders under the definition of gross income in section 47–1557a of the District of Columbia Code.[2] Our acquiescence in such a construction would be tantamount to acceptance of the District's argument that the words "gross income" take meaning quite apart

1. Opinion No. 996 (May 8, 1962), 90 Washington Law Reporter 847, as amended by Opinion No. 996(A) (June 11, 1962), 90 Washington Law Reporter 1103.

2. The section reads:
"The words 'gross income' include gains, profits, and income derived from salaries, wages, or compensation for personal services of whatever kind and in whatever form paid, including salaries, wages, and compensation paid by the United States to its officers and employees to the extent the same is not exempt under this subchapter, or income derived from any trade or business or sales or dealings in property, whether real or personal, other than capital assets as defined in this subchapter, growing out of the ownership or sale of, or interest in, such property; also from rent, royalties, interest, dividends, securities, or transactions of any trade or business carried on for gain or profit, or gains or profits, and income derived from any source whatever."

from what Congress has actually said. The term would be redefined to mean, without more, "income derived from any source whatever." Were that construction correct, the section could have been written thus: "The words 'gross income' include income derived from any source whatever." We think any such proposition is untenable. It is respectfully submitted that no such all-embracing significance may be attached to the clause. We think that this particular language is to be read as meaning that gross income shall include income derived from any source whatever except such "sources" as have been excluded [3] or are *excludable* by virtue of the sense in which Congress has defined the terms which have been used.

For example, as to the latter point, we may note that the gross income section relates the word "dividends" to D.C. Code § 47–1551c(m) (1961) which limits that term to a distribution out of a corporation's earnings, profits, or surplus "whenever earned by the corporation." This court specifically held in District of Columbia v. Oppenheimer [4] that unrealized appreciation does not constitute earnings and profits. A distribution of such assets accordingly was not a dividend, we said, and so the proceeds were not income "derived" from a gross income source.

Again, a majority view asserted [5] that a "sale" not involving "a distribution by a corporation of its earnings and capital in liquidation" lacks the elements of a dividend, and the proceeds of such a sale are not taxable. Had the sales of stock in *Berliner* been sales to third persons, even the majority there would have been bound to recognize that the proceeds would not be gross income derived from

that source. The plain fact is that our code has built-in exceptions which definitely limit the scope of what items of "gross income" are to be attributed to "any source whatever."

For another and perhaps significantly specific instance of purposeful limitation of the language, we may turn to the gross income section itself,[6] which reads, as pertinent:

"The words 'gross income' include * * * income derived from * * * sales or dealings in property, whether real or personal, OTHER THAN CAPITAL ASSETS AS DEFINED IN THIS SUBCHAPTER, growing out of the ownership, or sale of, or interest in, such property * * *." [7] (Emphasis added.)

Surely there is no mistaking the congressional purpose with respect to capital assets. Unlike the federal tax scheme, under the District's 2-year retention period such holdings as may qualify, mature into capital. Lest there be some doubt on the point Congress specifically excluded capital gains from "gross income" by D.C.Code § 47–1557a (b) (11) (1961) which reads:

"The words 'gross income' shall not include * * *:

"11. *Capital gains.*—Gains from the sale or exchange of any capital assets as defined in this subchapter."

Such gains can not be counted as coming within "gross income," for they become and are capital. The plain fact is that Congress has thus sought to give different treatment to taxpayers in the District of Columbia than to those who might be liable to capital gains taxes under the federal scheme. Encouragement of an investor in the economic life

3. Surely it will be granted that Congress itself excluded from the definition of "gross income" no less than 16 specific categories. D.C.Code § 47–1557a(b) (1961).

4. 112 U.S.App.D.C. 239, 301 F.2d 563 (1962).

5. Berliner v. District of Columbia, 103 U.S.App.D.C. 351, 356, 258 F.2d 651,

656, cert. denied, 357 U.S. 937, 78 S.Ct. 1384, 2 L.Ed.2d 1551 (1958).

6. *Supra* note 2.

7. See D.C.Code § 47–1551c(*l*) (1961) defining "capital assets" to mean any property, real or personal, tangible or intangible, held by the taxpayer for more than two years.

of the District is thus afforded, with complete exemption from tax on the capital gain where the sale or exchange of the property takes place with reference to property held for two years or more. The speculator trading out in less than two years is taxed; the investor is not.

■ In the instant cases the District tax authorities had ruled that the entire amounts of distributions were taxable, whether earned or not, or whether such distributions in part derived from an impairment of capital, or otherwise. But the Code had authorized the taxpayers in calculating net income to deduct depreciation computed as provided in D.C.Code § 47–1583e (1961). The Tax Court reviewing the whole problem ruled correctly that distributions from earnings were dividends, fully taxable. Otherwise, citing authorities entitled to respect,[8] the Tax Court concluded the distributions from depreciation reserves were not income subject to tax.[9] Our study of the respective contentions presented in our case No. 17,352 has convinced us that the several decisions [10] must be affirmed.

■ The taxpayers in cross-appeal No. 17,354 recognize that ordinarily a corporation with an accumulated deficit may not declare a dividend from subsequent profits until that deficit has been extinguished. They argue, however, that the Tax Court erroneously concluded that undistributed earnings in 1957 and 1958, utilized on the corporate books to reduce an accumulated deficit, nonetheless retained their character as earnings and became the source of possible dividends in a later year. The Tax Court's decision on this aspect of the cases was based upon the definition of "dividends" as found in the District Code, § 47–1551c(m) (1961), which reaches a distribution out of a corporation's earnings, profits or surplus "whenever earned" by the corporation. In the respects challenged, we are not persuaded that the Tax Court mistakenly treated the corporate accounting problem presented on this record.

No. 17,352 is affirmed.

No. 17,354 is affirmed.

WASHINGTON, Circuit Judge (dissenting).

These cases concern the individual income taxes payable under the District of Columbia laws,[1] by certain stockholders of a group of corporations, for the years 1959 and 1960. The corporations built and operated large apartment houses. In the taxable years the stockholders received dividends, plus other

---

8. *Lindheimer v. Illinois Tel. Co.*, 292 U.S. 151, 167, 54 S.Ct. 658, 78 L.Ed. 1182 (1934), defining the nature of a "depreciation reserve"; *Douglas Hotel Co. v. Commissioner of Internal Revenue*, 190 F.2d 766, 775 (8 Cir. 1951); and see *Commissioner of Internal Revenue v. Gross*, 236 F.2d 612, 616 (2 Cir. 1956), where the real sources of the distributions were the proceeds of certain mortgages based upon the appreciation in the value of the properties involved. In the instant case the corporations had distributed to their stockholders funds which in part exceeded current and accumulated earnings, the amounts distributed having been derived from depreciation reserves not required for mortgage amortization.

Nothing we have said relates to liability of the taxpayers under federal tax law.

9. Cf. *Willcuts v. Milton Dairy Co.*, 275 U.S. 215, 218, 48 S.Ct. 71, 72 L.Ed. 247 (1927); *Foley Securities Corp. v. Commissioner of Int. Rev.*, 106 F.2d 731, 733 (8 Cir. 1939).

10. Actually there had been seventeen petitions filed by the taxpayers in the Tax Court. Petitions 1762–1770 were filed November 15, 1961; petitions 1771–1780 were filed November 16, 1961. This court granted a joint motion of the parties for leave to file a single representative pleading and Joint Appendix.

1. District of Columbia Income and Franchise Tax Act of 1947, 61 Stat. 328, ch. 258, as amended. See in particular Section 2(a) of Title III of the Act, as amended (D.C.Code § 47–1557a(a) (1961)), stating that "The words 'gross income' include" *inter alia* "dividends * * * or gains or profits, and income derived from any source whatever." Congress of course provided in Section 1557a(b) that the words "gross income" shall not include 16 specified items but this case is not concerned with any type of receipt so excluded.

distributions which came from the depreciation reserves set up by the corporations.

I am of the view that the Tax Court erred in holding that the parts of the distributions in excess of the corporations' earnings and profits are not taxable. To be sure, such distributions are not taxable as "dividends," but I think in the circumstances here they unquestionably are taxable as income to the stockholders under the broad definition of gross income (see footnote 1) in Section 47–1557a of the D.C.Code.[2]

The stockholders invested in the stocks of the corporations to derive profit or gain. They have already in previous years had returned to them in the form of tax free distributions the amounts they invested in such stocks. Everything in excess of that investment, which they thereafter receive from the corporations —including dividends, although they are separately treated in the definition—must represent to them, and from their standpoint be, a profit flowing from their investment. It is "gains or profits, and income" derived from an investment and hence is gross income within the statutory definition.[3] Cf. Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 429–431, 75 S.Ct. 473, 99 L.Ed. 483 (1955). There is no provision in the law which can be construed as exempting from the definition of gross income distributions by a corporation which do not qualify as dividends under the statutory definition of that term but which are in excess of the investment in the stock. I conclude that after the stockholder's investment in the corporation has been returned to him tax free, the profits on his investment are taxable as thereafter received, whether or not they be "dividends."

From the corporation's standpoint, of course, the amounts distributed from depreciation reserves do not in a tax bookkeeping sense represent its earnings and profits available for distribution as dividends. That is, although they were derived from apartment rentals and were gross income to the corporation in the years earned, they were not counted as net income in those years for tax pur-

**2.** District of Columbia v. Oppenheimer, 112 U.S.App.D.C. 239, 301 F.2d 563 (1962), is not pertinent on this point. That case was concerned with a distribution in kind in liquidation, the fair market value of which exceeded the corporation's earnings and profits and the stockholders' investment. The only issue presented to us by the District on appeal was whether that excess was taxable as a dividend by virtue of the provision in Section 47–1583c of the D.C.Code that where property other than money is paid as a dividend, the basis to the recipient shall be the market value of the property at the time of distribution. Our opinion in that case held only that the excess, representing appreciation unrealized by the corporation, did not constitute its earnings and profits and was not a dividend. The basis section therefore had no application by its very terms. The opinion did not purport to decide that the amount in issue could not be income at all, and such a holding is not there suggested.

**3.** There were of course no sales or other dealings in the stock itself, and it is therefore irrelevant for present purposes whether or not the taxpayers had held their stock for more than two years so that the stock would qualify as a capital asset. See D.C.Code § 47–1551c (l). Of course, if stock has been held for more than two years, a gain from the *sale or exchange* of such stock is a capital gain and is not includible in gross income, under Section 47–1557a(b) (11). But if stock has been held for less than two years, it is not a capital asset, and any gain on its sale or exchange would be includible to the full extent as gross income under Section 47–1557a(a) as "income derived from any * * * sales or dealings in property * * * other than capital assets as defined in this subchapter, growing out of the ownership, or sale of, or interest in, such property * * *." As already stated, here there were no sales, exchanges, or "dealings" in the stock itself. Nor has Congress provided for District tax purposes, unlike the statute enacted for Federal tax purposes (see *infra*), that distributions by the corporation to stockholders, which are not dividends, *shall* to the extent they exceed the cost or other basis of the stock *be treated as* a gain from the sale or exchange of property.

poses because they were deductible as an allowance for depreciation of the apartment buildings. The distributions in issue came out of the reserves created by these deductions. But the nature or classification in the corporation's hands of the amounts distributed is irrelevant for our purposes. We are required to determine their proper nature or classification from the stockholder's standpoint, once he has received them. As stated, I think the conclusion is inescapable that to the stockholder the amount he receives is income derived from his investment, once the amount represented by his investment has been returned, and hence to him is taxable income.

My view has solid support in the provisions relating to corporate distributions in the Internal Revenue Code of 1954. Under Sections 301(c) (1) and 316(a) of the Revenue Code a distribution is includible in gross income as a "dividend" to the extent that the corporation has earnings and profits to cover it, as is true also under the District law. Beyond that, a distribution is under Section 301(c) (2) first treated as a return of the stockholder's investment in the corporation, and is applied against and reduces the adjusted basis (cost) of his stock. Section 301(c) (3) (A) then provides:

"Except as provided in subparagraph (B) [relating to distributions out of increase in value accrued before March 1, 1913], that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, *shall be treated as gain from the sale or exchange of property.*" (Emphasis supplied.)

No sale or exchange of property has in fact occurred and the provision merely prescribes for Federal tax purposes the method of treating the distribution so received.[4]

This provision clearly is a congressional recognition that corporate distributions which do not qualify as dividends, to the extent that they exceed the amount invested by the stockholder, represent a profit and income to the stockholder.[5] For Federal income tax purposes Congress has prescribed that it shall be treated and taxed in a certain way. Congress has not given such a prescription for District tax purposes, but this does not militate against the fact that the amount represents to the stockholder "gains or profits, and income" derived from his investment and hence is gross income as Congress has defined it.[6] In the absence of some specific provision that such income is to be excluded from taxable gross income for District tax purposes, it cannot be assumed that Congress intended that a distribution, recognized by it to be income and taxable as such for Federal tax purposes, should not be deemed to be income for District tax purposes.[7]

4. The U. S. Tax Court has taken the position that the distribution shall be treated as capital gain, i. e., one from the sale or exchange of a capital asset, and that the holding period for the stock determines the distribution's classification as long term or short term capital gain. See George M. Gross, 23 T.C. 756, 767–768 et seq. (1955), affirmed, 236 F.2d 612 (2d Cir. 1956). The Commissioner of Internal Revenue has acquiesced. Rev.Rul. 57–357, 1957–2 Cum.Bull. 900.

5. Were it not income Congress would be powerless to treat it as gain subject to income tax under the Sixteenth Amendment. See Commissioner of Internal Revenue v. Obear-Nester Glass Co., 217 F.2d 56, 58 (7th Cir. 1954), cert. denied,

348 U.S. 982, 75 S.Ct. 570, 99 L.Ed. 764 (1955), reh. denied, 349 U.S. 948, 75 S. Ct. 870, 99 L.Ed. 1274 (1955).

6. Congress may not have provided the Federal capital gain treatment for the District because it was unwilling to make the changes in the definition of capital asset which seemingly would have been necessary, or it may have wished a distribution in excess of the investment in the stock to be taxable as ordinary income.

7. The definition of gross income in Section 22(a) of the Internal Revenue Code of 1939 was very similar to that contained in Section 47–1557a(a) of the D.C.Code. It included the provision found in the District Code that gross income includes "gains or profits, and income derived from

In the appeals of the stockholders (No. 17,354) I would affirm the Tax Court. Its determination as to the amount of the earnings and profits available for dividends is, I think, correct.

Edgerton, Senior Circuit Judge, dissented.

any source whatever." It was this provision, which first appeared in the Revenue Act of 1913, with which the Supreme Court was concerned in Commissioner of Internal Revenue v. Glenshaw Glass Co., supra, the Court pointing out (348 U.S. at 430, 75 S.Ct. at 476, 99 L.Ed. at 483) that "content" must be ascribed to it.

Although Section 61 of the Internal Revenue Code of 1954 revised the gross income definition, the provision that "gross income means all income from whatever source derived, including (but not limited to) the following items * * *" remains.