**PARK & TILFORD DISTILLERS CORP. v. UNITED STATES.**

No. 49434.

United States Court of Claims.

Nov. 4, 1952.

Roswell Magill, New York City, for plaintiff. Albert Rosenblum, New York City was on the briefs.

Joseph H. Sheppard, Washington, D. C., with whom was Ellis N. Slack, Acting Asst. Atty. Gen., and Andrew D. Sharpe, Washington, D. C., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff has sued for the refund of corporation income and personal holding company income taxes paid by it for the year 1944. It paid the taxes, together with accrued interest, in 1949. The total payment was $285,257.24. The plaintiff filed a timely claim for refund, which has not been acted upon, and it is entitled to have its claim decided here on its merits.

The money which came to the plaintiff in 1944, and whose status as taxable income *vel non* is here in litigation, was paid to it by David A. Schulte. He was an officer and a director of the plaintiff corporation, and owned more than ten percent of its

stock. During the years 1942, 1943 and 1944 Schulte had sold and purchased, or purchased and sold, 9,900 shares of the plaintiff's stock in the open market, each purchase and sale or sale and purchase having occurred within a six-month period. He realized a profit of $264,827.57 on these transactions. Section 16(b) of the Securities Exchange Act of 1934, 48 Stat. 896, 15 U.S.C.A. § 78p(b) provides that when a person who owns more than ten percent of the stock of a corporation makes a profit from selling and purchasing, or purchasing and selling, shares of the corporation's stock within a six-month period, he must turn his profits over to the corporation. The plaintiff corporation made a demand upon Schulte that he pay over to the corporation his profits of $264,827.57, and he did so in 1944. As we have said, it was this payment to the corporation which was taxed by the Government as income and which the plaintiff insists was not taxable income.

The money was paid to the plaintiff and became its money. In a general sense, then, it was income. But not everything of value that comes into one's control is taxable income. So far as is here pertinent, that is because the income tax statutes do not purport to levy an income tax on all money or things of value which come into one's control. We say, so far as is here pertinent, because we do not understand the plaintiff to suggest that Congress could not constitutionally tax the plaintiff on the money here in question. Our question, then, is a question of the proper construction of the income tax statutes.

■ Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), says:

"(a) *General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

The receipt of the money here in question seems not to fall within any of the language of Section 22(a) except the clause last quoted, "gains or profits and income derived from any source whatever." It was clearly not compensation for services, or profits from sales, or rent, interest or dividends. But it was "income derived from any source whatever", unless those words, as used in the statute, have a meaning more restricted than their apparent meaning.

We see no reason for not giving the statutory language its natural meaning, as to the money here in question. It was, to be sure, a "windfall" to the plaintiff. If Congress were to select one kind of receipt of money which, above all others, would be a fair mark for taxation, it might well be "windfalls." That would not penalize industry nor discourage enterprise or economy as taxes on wages, salaries and profits do. At any rate we cannot imagine Congress expressly exempting windfalls from taxation as income, as it has done expressly with regard to gifts and inheritances. That being so, it is not for the courts, by the process of statutory construction, to create an exception which the legislature would quite certainly not have made if it had dealt expressly with the question.

The plaintiff relies upon language used by the Supreme Court of the United States in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521. The question in that case was whether stock dividends distributed by a corporation to its shareholders, in proportion to their existing holdings, constituted taxable income. The court's decision was that they did not, they being merely evidence of accretions to capital which had not been "realized" by conversion into money in the hands of the shareholder. The shareholder still had the same interest in the corporation, though he now had two pieces of paper instead of one, to evidence that interest. The court said, 252 U.S. at page 207, 40 S.Ct. at page 193, with

regard to the statutory language "gain derived from capital":

> " * * * Here we have the essential matter: *not* a gain *accruing to* capital; not 'a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value, *proceeding from* the property, *severed from* the capital, however invested or employed, and *coming in,* being *'derived'*—that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal—*that* is income derived from property. Nothing else answers the description."

The court concluded that Congress could not constitutionally tax unrealized accretions to capital.

The instant case does not involve at all the problem of unrealized accretions to capital. The receipt of the money in question was, in every possible sense, a realization. The money came in from an outside source, it went into the plaintiff's treasury, it did not replace something which went out of plaintiff's ownership as a consideration for it. The decision in Eisner v. Macomber, supra, seems, then, not to be in point in the instant case. But in Eisner v. Macomber the court defined "income" for income tax purposes, as follows:

> " ' * * * the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets * * *."

We are unwilling to surmise that the court intended by this language, not necessary to its decision, to read out of the income tax statute language which Congress must have inserted with great deliberation and for important reasons, viz., "income derived from any source whatever." It could not have so intended for constitutional reasons since the quoted language was taken almost literally from the Constitutional Amendment which authorized the taxation of incomes.

In Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788, the court said:

> "The broad sweep of this language [Section 22(a)] indicates the purpose of Congress to use the full measure of its taxing power within those definable categories."

In Helvering v. Brunn, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864, the court said that its expressions in Eisner v. Macomber were merely for the purpose of clarifying the distinction between an ordinary dividend and a stock dividend, and were not controlling in the case then before it for decision. In United States v. Safety Car Heating Co., 297 U.S. 88, 93, 56 S.Ct. 353, 356, 80 L.Ed. 500, the court said of the words "from any source whatever" as they appeared in the Revenue Act of 1926, § 213(a), 26 U.S.C.A.Int.Rev.Acts, page 163:

> "We have said of that act that it reveals in its provisions an intention on the part of Congress to reach 'pretty much every sort of income subject to the federal power.' Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 89, 55 S.Ct. 50, 52, 79 L.Ed. 211."

In Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 62, 80 L.Ed. 3, the court said, of the definitions of gross income in the statutes:

> "They are to be considered in the light of the evident intent of the Congress 'to use its power to the full extent.' Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 476, 69 L.Ed. 897; Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 89, 55 S.Ct. 50, 79 L.Ed. 211."

If we give heed to those repeated statements of the Supreme Court that Congress has intended, in the income tax laws, to use its power to the full extent, we must hold the payment here in question to be subject to the tax. It is not, and we think could not rationally be, suggested that Congress lacks the power to tax windfalls as income.

In Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, the court held that an extortioner who coerced the payment of an nonexistent claim against another by threatening to inflict harm upon him and his family, was taxable upon the proceeds of his ex-

tortion. It is not possible to bring such income within the definition of income given by the court in Eisner v. Macomber, supra. Yet the court said, 343 U.S. at page 138, 72 S.Ct. at page 576:

"We think the power of Congress to tax these receipts as income under the Sixteenth Amendment is unquestionable. The broad language of § 22(a) supports the declarations of this Court that Congress in enacting that section exercised its full power to tax income."

Congress has, of course, expressly exempted gifts from the income tax, and there are decisions holding transactions resembling gifts not taxable. In Edwards v. Cuba Railroad, 268 U.S. 628, 45 S.Ct. 614, 69 L.Ed. 1124, it was held that a subsidy paid by a government to a railroad company for erecting a railroad was not taxable income to the railroad. The court said that the subsidy was a "windfall" and not subject to income tax. A windfall may, of course, be a gift, and thus expressly exempt from income tax. But if, as in the instant case, the windfall is clearly not a gift, but a payment required by a statute, see Robertson v. United States, 343 U.S. 711, 72 S.Ct. 994, we do not see how its exemption could be reconciled with the reiterated statements that Congress intended, by Section 22(a), to tax income to the extent of its constitutional power.

In addition to subsidies, the plaintiff cites other types of receipts by corporations which have been held not to constitute taxable income, viz., capital contributions, receipts from the sale of its own stock at a premium, forfeited stock subscriptions, and revaluation of appreciated assets. Most of the decisions cited by the plaintiff in this connection are justifiable on the ground that the transaction involved a donation, or a purchase of an interest in the corporation, or an unrealized accession to the corporation's wealth. Such of them as must rest merely upon the definition of income in Eisner v. Macomber, which the Supreme Court no longer regards as authoritative except in cases involving stock dividends or analogous problems, we respectfully decline to follow, since we think they are not consistent with the tax statutes.

The plaintiff urges that the payment was a penalty imposed upon Schulte for the benefit of the plaintiff. That question would be of importance in a case where an inside trader, such as Schulte, sought to deduct the payment from his taxable income, either as a loss under Section 23(e) or as a business expense under Section 23(a)(1) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1), (e). The Tax Court of the United States has held that the insider is not entitled to the deduction, since to allow it would frustrate the policy of Section 16(b). William F. Davis, Jr., 17 T.C. 549. In Smolowe v. Delendo Corp., 2 Cir., 136 F.2d 231, 148 A.L.R. 300, and in Dottenheim v. Emerson Electric Mfg. Co., E.D., N.Y., 7 F.R.D. 195 such payments have been called penalties. We do not understand, however, that the fact that A, who pays money to B, cannot deduct the amount of the payment from his income in computing his income tax, has any direct bearing upon whether the receipt of the payment by B is income to him. For example, if an employer pays wages or salaries in excess of those permitted by a wage stabilization law, and is therefore not entitled to charge them against his income as a business expense, that does not mean that they are not fully taxable to the employees who receive them.

The treatment, for income tax purposes, of a penalty, so far as the receiver of the penalty is concerned, is analogous to the treatment of damages received by him for some violation of his rights. Where damages are recovered in lieu of profits or income to which the taxpayer would have been entitled, but for the violation of his rights, they are taxable to him as income. Swastika Oil & Gas Co. v. Commissioner, 6 Cir., 123 F.2d 382, certiorari denied 317 U.S. 639, 63 S.Ct. 30, 87 L.Ed. 515; Martin Bros. Box Co. v. Commissioner, 6 Cir., 142 F.2d 457, affirming T.C.Memo. Decision.

It would seem that if the damages were awarded as a recompense for the impairment of a capital asset, they would not represent an economic gain and would not be taxable as income. Perhaps that is the *rationale* of Farmers' & Merchants' Bank

of Catlettsburg, Ky. v. Commissioner, 6 Cir., 59 F.2d 912 where the taxpayer recovered damages from another person for conduct designed to destroy or injure the taxpayer's business. The damages recovered were held not to be taxable income. Cases such as Central R. Co. of New Jersey v. Commissioner, 3 Cir., 79 F.2d 697, 101 A.L.R. 1448, Edward H. Clark, 40 B.T.A. 333, and Highland Farms Corporation, 42 B.T.A. 1314, 1319, which seem to rest only upon the definition of income given by the Supreme Court in Eisner v. Macomber, do not seem to us persuasive.

The plaintiff's motion for summary judgment is denied and the petition is dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.