William F. PERRY and Josephine
M. Perry

v.

UNITED STATES.

No. 27–56.

United States Court of Claims.
April 2, 1958.

Madden and Laramore, JJ., dissented.

Richard S. Doyle, Washington, D. C., for plaintiffs. Blair, Korner, Doyle & Worth, Washington, D. C., were on the briefs.

David R. Frazer, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

WHITAKER, Judge.

Plaintiffs, who have filed a joint income tax return for the calendar year 1953, sue to recover taxes paid by them for that year in the amount of $8,287.26, plus interest as provided by law. The issue presented is whether an income tax may be imposed upon the corpus of a charitable trust that has been returned to the sole settlor when the donees thereof have refused to comply with the terms of the gift.

Plaintiff William F. Perry in 1944 created a trust for the benefit of the Town of Fitzwilliam, New Hampshire. The corpus was to be used for the construction of an addition to the Public Library and for no other purpose. The town decided that it did not desire to build the addition to the library, and the corpus of the trust was returned to the settlor in 1953.

The Commissioner of Internal Revenue required plaintiffs to include in their income tax return for 1953 the amount returned to them in that year. Plaintiffs say this is improper, because what they received was a return of capital, and not income. The defendant says it was proper because plaintiffs, in the years they made contributions to the trust, deducted the amounts contributed from their income, and thus received a tax benefit in those years.

There can be no doubt that what the taxpayer received from the town in 1953 was a return of capital and not income, except for the accumulations of interest and dividends on the corpus. The taxpayer admits he is required to include these accumulations in his income.

The taxpayer does not admit that he is required to account for the appreciation in value of the securities, and we do not think he is. He gave the securities to the town for a specific purpose. When the securities were returned, because the town did not desire them for this purpose, it was as if they had remained in the taxpayer's possession all the time, and, hence, he was not required to account for the appreciation in value until he disposed of them.

As stated, the return to the taxpayer of the property he had tried to give away cannot possibly be considered as income —he merely got back his own property. It cannot possibly be considered as income, except on the ground that he had deducted from his income the amount contributed in each year, thus reducing his taxes. In such cases the courts have heretofore required the inclusion of an item recovered, where a deduction had been taken for it in a prior year.

The only rational basis for such decisions is that it would be inequitable for the taxpayer to reduce his taxes for prior years on account of the contributions, and not to pay taxes on them when he got them back. This is the so-called tax benefit rule. It is a rule enunciated by the courts, and not by Congress, and is based altogether on equitable considerations. But the Supreme Court, in the case of Lewyt Corp. v. Commissioner, 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029, had this to say of equitable considerations in the administration of tax law:

"But the rule that general equitable considerations do not control the measure of deductions or tax benefits cuts both ways. It is as applicable to the Government as to the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. But where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall. * * *"

In other words, the Supreme Court said that equitable considerations have no place in the laws of taxation. The tax benefit rule is based upon equitable considerations, and if we are to take the statement in Lewyt Corp. v. Commissioner, supra, at its face value, we must hold that the amounts received in 1953 are not to be included in gross income merely because the taxpayer had received a tax benefit on account of them in prior years.

We must say, however, that the tax benefit rule seems well entrenched in judicial decision. The Supreme Court impliedly recognized it in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, and had done so many times before.

The only Congressional sanction for the tax-benefit rule is section 22(b) (12) of the Revenue Act of 1939, as amended, 26 U.S.C.A. § 22(b) (12), which prohibits the inclusion within income of a subsequent year of all amounts recovered as to which the taxpayer had received no tax benefit as the result of a deduction in a prior year. This was limited, however, to the recovery of bad debts, and taxes and delinquency amounts.

The present case does not come within the provisions of that statute. The Commissioner of Internal Revenue, however, after the enactment of section 22(b) (12) made the section applicable to transactions other than bad debts and taxes. In T.D. 5454 (1945 Cum.Bull. 68) it was provided that tax benefit principles should apply to "other losses, expenditures, and accruals made the basis for deductions."

If, therefore, we should hold that the amounts received in 1953 were not includable in gross income at all, we would be going contrary to prior judicial decisions, and to the express provisions of the Treasury Regulations. Therefore, bowing to the weight of judicial precedents, and in the face of the language in the Lewyt case, supra, we feel compelled to hold that we must take into account the tax benefit received by the taxpayers in prior years.

By this we mean that in computing income for 1953, the taxpayers should exclude from their income the amount of the corpus returned to them in that year, but they should add to the tax thus computed on their 1953 income the amount by which their taxes in prior years had been decreased on account of the deductions made for contributions to this trust fund. So computed, the Government would recoup the taxes escaped in the prior year on account of the deduction. It would be inequitable to require plaintiffs to include in their income for 1953 the aggregate of the deductions claimed in prior years, because of the fact that the rates of taxation vary greatly from year to year, and because the inclusion in one year of all the deductions taken in several years would probably put the taxpayer in a higher tax bracket.

In computing the gain on the stock sold by the settlor shortly after it was returned to him, original cost should be used as a basis.

Plaintiffs are entitled to recover, including interest as provided by law, and judgment is entered to that effect. The amount of recovery will be determined under Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LITTLETON, Judge, concur.

MADDEN, Judge (dissenting).

When the plaintiff William F. Perry conveyed the property in question to the town, he inserted a condition that if the property was not used to finance an addition to the library, it should be returned to him. He thus retained an interest in the property, of a highly contingent nature, an interest not at all likely to expand into complete ownership. But his contingent interest did expand into complete ownership.

If one sells a piece of land, and is paid for it, but puts a condition in the deed that if liquor is sold on the premises he is to get the land back, he has a contingent interest comparable to that of the grantor plaintiff in the instant case. If the condition happens and he gets the land back, I suppose there are no immediate income tax consequences. If he later sells it, I suppose his basis would be zero, because he was once paid for the land, and his capital gain or loss was computed at that time.

The factor in the instant case that produces possible tax consequences is that the conveyance subject to the condition subsequent was a conveyance to charity, and therefore was deductible, and was deducted from otherwise taxable income in the year in which the conveyance was made.

The plaintiff urges that the reconveyance from the town to him was a gift, and therefore expressly tax free to him as recipient, under section 22(b) (3) of the Internal Revenue Code of 1939. This would present the unusual situation of a gift *from a charity*, in contrast to the usual one of a gift to a charity. The interest which the plaintiff reserved in the property when he conveyed it to the town was the reason and consideration for the town's reconveyance to him, and the transaction was not a gift.

What we have, then, is the unanticipated recovery by a former owner of property of that property after he has given it up for lost. The plaintiff was in a situation comparable to that of the person who has had to pax taxes and hopes that he may get them back later by litigation, or the one who has given up all real hope of collecting a debt owed to him. In the latter case, the income tax law allows a deduction from income for the taxes paid, and for the bad debt. In these latter situa-

tions, if the taxpayer recovered his taxes or collected his bad debt in a later year, the administrative authorities and the courts, without the help of any statute, required him to pay income tax upon his recovery. Of course, one does not ordinarily acquire taxable income by collecting a debt, or by a refund of taxes which he never should have had to pay. The reason that the money was regarded as taxable in the special cases referred to was that, once having used the taxes paid or the bad debt as a tax deduction, the prospect of recovery was, *for income tax purposes*, written off, though as a legal claim it still existed. Having been written off, the later realization of the claim was, *again for tax purposes,* like a windfall to the taxpayer, and within the broad definition of taxable income. See Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S. Ct. 473, 99 L.Ed. 483; Park & Tilford Distillers Corp. v. United States, 107 F. Supp. 941, 123 Ct.Cl. 509.

Section 22(b) (12) was not the origin of the doctrine of taxability in the situations described above. It was rather a limitation upon the existing judge-made rule of taxability, limiting the amount of the recovery which could be taxed to the amount which had actually been used as a deduction in the prior year. Section 22(b) (12) applies only to the later recovery of bad debts, taxes, and delinquency amounts.

The doctrine which existed prior to section 22(b) (12) would certainly have been applicable to other situations which fell within the reason of the doctrine. For example, if one had taken a deduction for property stolen from him, and had in a later year recovered the stolen property, he would, I should suppose, have been taxable upon its value. He owned it all the time for most legal pur-poses, but for income tax purposes he had written it off. I think the same is true of the unique situation of the plaintiff.

From what I have said, it would follow that the law prior to the enactment of section 22(b) (12) would be applicable to situations other than those covered by that section. There is no indication that Congress intended to change ·the law except to put the limitation noted above upon it, for the benefit of the taxpayer in the kind of cases that most frequently arise. We need not decide whether the limitation would be applicable in the instant case, since the plaintiff received full tax deductions for the charitable gifts in the years in which they were made.

If the foregoing analysis is correct, the property reconveyed to the plaintiff was taxable income. I think it should be treated as such. The comparable recoveries, in the cases of bad debts and refunds of taxes, were so treated under the judge-made law which preceded the enactment of section 22(b) (12) and are so treated under that section. If Congress, in enacting section 22(b) (12) had chosen to provide in it for the meticulous recomputation which the court's opinion requires, that would have been a reason for the court's doing so in this analogous case not covered by the statute. Since Congress did not regard such a recomputation as necessary to do equity in the numerous cases covered by the statute, I think the plaintiff's unusual situation should not be accorded a treatment different from that accorded other taxpayers whose claims to equitable treatment are exactly equivalent to those of the plaintiff.

LARAMORE, Judge, joins in the foregoing dissenting opinion.