Madden, Judge,
dissenting:
When the plaintiff William F. Perry conveyed the property in question to the town, he inserted a condition that if the property was not used to finance an addition to the library, it should be returned to him. He thus retained an interest in the property, of a highly contingent nature, an interest not at all likely to expand into complete ownership. But his contingent interest did expand into complete ownership.
If one sells a piece of land, and is paid for it, but puts a condition in the deed that if liquor is sold on the premises he is to get the land back, he has a contingent interest comparable to that of the grantor plaintiff in the instant case. If the condition happens and he gets the land back, I suppose there are no immediate income tax' consequences. If he later sells it, I suppose his basis would be zero, because he was once paid for the land, and his capital gain or loss was computed at that time.
The factor in the instant case that produces possible tax consequences is that the conveyance subject to the condition subsequent was a conveyance to charity, and therefore was *12 deductible, and was deducted from otherwise taxable income in the year in which the conveyance was made.
The plaintiff urges that the reconveyance from the town to him was a gift, and therefore expressly tax free to him as recipient, under section 22 (b) (3) of the Internal Eevenue Code of 1939. This would present the unusual situation of a gift from a charity, in contrast to the usual one of a gift to a charity. The interest which the plaintiff reserved in the property when he conveyed it to the town was the reason and consideration for the town’s reconveyance to him, and the transaction was not a gift.
What we have, then, is the unanticipated recovery by a former owner of property of that property after he has given it up for lost. The plaintiff was in a situation comparable to that of the person who has had to pay taxes and hopes that he may get them back later by litigation, or the one who has given up all real hope of collecting a debt owed to him. In the latter case, the income tax law allows a deduction from income for the taxes paid, and for the bad debt. In these latter situations, if the taxpayer recovered his taxes or collected his bad debt in a later year, the administrative authorities and the courts, without the help of any statute, required him to pay income tax upon his recovery. Of course, one does not ordinarily acquire taxable income by collecting a debt, or by a refund of taxes which he never should have had to pay. The reason that the money was regarded as taxable in the special cases referred to was that, once having used the taxes paid or the bad debt as a tax deduction, the prospect of recovery was, for income tax purposes, written off, though as a legal claim it still existed. Having been written off, the later realization of the claim was, again for tax purposes, like a windfall to the taxpayer, and within the broad definition of taxable income. See Commissioner v. Glenshaw Glass Co., 348 U. S. 426; Park & Tilford Distillers Corp. v. United States, 123 C. Cls. 509.
Section 22 (b) (12) was not the origin of the doctrine of taxability in the situations described above. It was rather a limitation upon the existing judge-made rule of taxability, limiting the amount of the recovery which could be taxed to the amount which had actually been used as a deduction in *13 tbe prior year. Section 22(b) (12) applies only to the later recovery of bad debts, taxes, and delinquency amounts.
The doctrine which existed prior to section 22 (b) (12) would certainly have been applicable to other situations which fell within the reason of the doctrine. For example, if one had taken a deduction for property stolen from him, and had in a later year recovered the stolen property, he would, I should suppose, have been taxable upon its value. He owned it all the time for most legal purposes, but for income tax purposes he had written it off. I think the same is true of the unique situation of the plaintiff.
From what I have said, it would follow that the law prior to the enactment of section 22 (b) (12) would be applicable to situations other than those covered by that section. There is no indication that Congress intended to change the law except to put the limitation noted above upon it, for the benefit of the taxpayer in the kind of cases that most frequently arise. We need not decide whether the limitation would be applicable in the instant case, since the plaintiff received full tax deductions for the charitable gifts in the years in which they were made.
If the foregoing analysis is correct, the property re-conveyed to the plaintiff was taxable income. I think it should be treated as such. The comparable recoveries, in the cases of bad debts and refunds of taxes, were so treated under the judge-made law which preceded the enactment of section 22 (b) (12) and are so treated under that section. If Congress, in enacting section 22 (b) (12) had chosen to provide in it for the meticulous recomputation which the court’s opinion requires, that would have been a reason for the court’s doing so in this analogous case not covered by the statute. Since Congress did not regard such a recomputation as necessary to do equity in the numerous cases covered by the statute, I think the plaintiff’s unusual situation should not be accorded a treatment different from that accorded other taxpayers whose claims to equitable treatment are exactly equivalent to those of the plaintiff.
Laramore, Judge, joins in the foregoing dissenting opinion.
*14 FINDINGS OF FACT
The court, having considered the evidence, the stipulation of facts between the parties, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiffs are individuals, citizens of the United States, and are husband and wife residing at 55 Court Street, Keene, New Hampshire. The plaintiffs duly filed with the Director of Internal Eevenue, Portsmouth, New Hampshire, their timely joint federal income tax return for the calendar year 1953, and paid to said Director the amount of tax shown thereon to be due, namely $15,460.24.
2. Plaintiff William F. Perry executed and delivered to the trustees of the Fitzwilliam (N. H.) Town Library on October 24,1944, a deed of gift presenting and assigning to the trustees four $1,000 bonds of the Wisconsin Central Railway Company bearing 4% interest and due July 1, 1949, which deed of gift and bonds were accepted by the trustees on the same date. The market value of these bonds at the time of the gift was $2,880.
3. Pursuant to said deed of gift plaintiff William F. Perry in the years 1945, 1946, 1947 and 1948 made additional gifts of certain cash and securities to the trustees of the Fitz-william Town Library for the purpose of building and equipping a fireproof addition to the Town Library, and he assigned, transferred and delivered such cash and securities to the trustees of the Fitzwilliam Town Library. The dates on which such additional gifts were made and the value of all such gifts were as follows:

Value of Date Amount Cash or Security Gift

2/10/45 !? $3,000_ Wisconsin Central 4% Bonds_ $2, 580. 00 '
2/20/45 ' $333.74... Casli_ 333.74
2/25/46 200 Shs_ Peerless Casualty Co. common, 2, 800. 00 Cert. C-8013.
1/27/47 200 Shs_ Peerless Casualty Co. common, 2, 800. 00 Cert. C-9329.
12/20/48 190 Shs_ Peerless Casualty Co. common, 2, 660. 00 Cert. C-10092.
4.In June 1949, William F. Perry executed and delivered to the trustees an amendment to said deed of gift of October 24,1944, which was accepted and approved by the trustees.
*15 5. Thereafter plaintiff William F. Perry on December 16, 1949, and December 28, 1949, made gifts of cash to the trustees of the Town Library in the amounts of $200 and $800, respectively; and on October 17,1950, Mr. Perry made a gift to the trustees of the Town Library of 100 shares of Peerless Casualty Company common stock, which stock had a market value of $1,700.00
6. During the years 1944 through 1950, plaintiff deducted the value of such gifts from gross income reported on his federal income tax returns filed for the respective years in which such gifts were made, under the provisions of Section 23 (o), Internal Eevenue Code of 1939. These deductions resulted in a reduction of plaintiff’s income tax liability for each of the above years.
7. On or about February 17,1945, the trustees of the Town Library sold the three $1,000 Wisconsin Central Railway 4% bonds for $2,588.26; and on or about January 10, 1948, the trustees sold the four $1,000 Wisconsin Central Railway 4% bonds for $2,980.23. The proceeds of the sale of those bonds were invested in other securities as set forth in finding 9.
8. The Treasurer of the Library trustees received the interest and dividends due and payable on said securities over the period of years 1945 to February 1953, deposited those receipts in the Cheshire County Savings Bank, Keene, New Hampshire, under the name of Fitzwilliam Library Trustees, Francis R. Parker, Treasurer, and said bank credited from time to time interest on said account.
9. The total amount of interest, dividends and accumulated interest credited thereto for the period 1945 to and including February 4, 1953, was $8,292.57. During that period the Treasurer of the Library trustees withdrew part of the above amount and invested in common stock of Peerless Casualty Company as follows:
May 11, 1946 15 shares_ $247. 50
Dee. 22, 1949 13 shares_ 214. 50
Dee. 21,1950 193 shares_ 3, 184. 50
A further sum was withdrawn by the trustees and together with the proceeds of sale of the Wisconsin Central Railway *16 bonds described in finding 7 above were invested by the trustees in the following securities:
Jan. 22, 1948-30 Shs. Pfd. Gulf Mobile & Ohio R. R.~ 5% @ mi. $1, 400. 82
Dec. 6, 1948-2M Minn. St. Paul & S. S. Marie R. R. 4’s due Jan. 1, 1991 @ 5134-1, 035. 00
Dec. 7, 1948-3M Minn. St. Paul & S. S. Marie R. R. 4’s due Jan. 1, 1991 @ 51%. 1, 552. 50
Aug. 1, 1950. 1M Missouri, Kansas & Texas R. R. 5’s, due 1967 @ 91%. 922. 50
Aug. 1, 1950. 1M Missouri, Kansas & Texas R. R. 5’s, due 1967 @ 92. 925. 17
Aug. 3, 1950. 3M Missouri Kansas & Texas R. R. 5’s, due 1967 @ 92. 2, 763. 23
10. In September 1951, the MacMillin Company, contractors and builders, of Keene, New Hampshire, made preliminary sketches of the proposed building, and prior to the town meeting in March 1952, there was prepared a second plan with estimated costs to provide among other things for a boiler room to heat the new addition.
11. In order to secure the approval of the town for the construction of the addition to the library building the selectmen of the Town of Fitzwilliam included the following two articles in the 1951 warrant (notice) for vote at the town meeting to be held March 11, 1952:
Art. 32. To see if the town will vote to authorize William F. Perry of Keene, N. H., in cooperation with the Fitzwilliam Town Library Association and the Library Trustees, without any expense to the town, to build and construct a fireproof addition to the Town Library in accordance with plans and specifications submitted at this town meeting, said addition to be the property of the town with its full custody and management vested in the Library Trustees, or take any other action thereto.
Art. 83. To see if the town will vote to authorize the Fitzwilliam Town Library Trustees to remove, without expense to the town, the barn and so much of the ell of the present library building as is necessary to permit the construction of the fireproof addition to be given by Mr. William F. Perry, or take any other action thereto.
12. Thereafter, on March 11,1952, the town meeting voted the passage of Article 32 with an amendment as follows:
*17 That the Library Trustees shall not sign any contract or agreement pertaining to the construction of the Library Addition.
The town meeting voted to adopt Article 33 without change; and in addition the town meeting voted to pass a resolution of appreciation to Mr. Perry as follows:
Voted to pass a resolution presented by Philip J. Yon, by a unanimous rising vote of tranks to Mr. William F. Perry for the gift to the town and that a copy of this expression be sent to Mr. Perry.
13. Thereafter the plans and specifications submitted by the contractor MacMillin & Company were approved by the trustees of the Library and plaintiff William F. Perry, and the structural iron was ordered and delivered on the lot by the builder; whereupon the selectmen of the town refused to permit the construction of the addition to the building and ordered the contractor to remove the structural iron and to stop work on the building.
14. Thereafter, on September 29, 1952, plaintiff William F. Perry addressed a registered letter to the Library trustees, requesting that the trustees return to him the value of the securities he donated plus the accumulated income since the trustees did not accept the conditions of the gift. On October 11, 1952, the Library trustees addressed a letter to William F. Perry in answer to his letter of September 29, 1952.
15. On December 30, 1952, William F. Perry brought a suit in equity in the Superior Court of Cheshire County, New Hampshire, against the selectmen of Fitzwilliam, the Library trustees of Fitzwilliam and the Director of Charitable Trusts of New Hampshire, praying for a return of the securities and accumulated income given by plaintiff William F. Perry to the Town of Fitzwilliam during the years 1944 through 1950.
16. Thereafter the selectmen of the town included the following two articles in the 1952 warrant (notice) for vote at the town meeting to be held March 10,1953:
Art. 26. To see if the town will vote to rescind the votes with amendments passed at the last town meeting under Articles 32 and 33 of the 1952 warrant relating to *18 William F. Perry and the addition to the library building.
Art. 27. To see if the town will vote to instruct the selectmen to release any claim the town may have in the so-called William F. Perry Library Gifts to the town or library trustees and instruct the library trustees to return to William F. Perry said gifts with any accumulations.
These articles were passed by vote of the town meeting held March 10,1953.
17. On March 17,1953, the parties to the suit, referred to in finding 15, signed and filed an agreement with the Superior Court agreeing to dismiss the suit.
18. On March 18, 1953, the trustees of the Town Library transferred, delivered and paid over to plaintiff William F. Perry the following securities and cash:
946 shares common stock of Peerless Casualty Co_$17, 974 00
$5,000 par value bonds of Missouri, Kansas & Texas R. R. Co. 5%, due 1/1/67_ 4, 187. 50
$5,000 par value bonds of Minn. St. Paul & S. S. Marie Co. 4%, due 1/1/91_ 3, 050. 00
30 shares preferred stock of Gulf Mobile & Ohio R. R- 2, 250. 00
$5,180.99 cash by Bank Book No. 35203 of Cheshire County Savings Bank_ 5,180. 99
Total Market Value_ 32, 642. 49
19. At the time of the delivery of the foregoing securities and cash to plaintiff he agreed with the trustees of the Library to pay an invoice of the contractor, MaoMillin & Company, for labor and services performed and materials delivered for the addition to the Library, and plaintiff William F. Perry thereafter paid the said invoice in the year 1953 in the amount of $836.45.
20. In September 1953, plaintiff William F. Perry presented the facts with reference to these transactions to the Commissioner of Internal Revenue and requested advice as to the treatment for federal income tax purposes of the cash and securities transferred and delivered to him in March 1953 pursuant to vote of the town meeting of the Town of Fitzwilliam. In accordance with this request, the Commissioner issued a ruling under date of December 9, 1953.
*19 21. On October 20, 1954, plaintiffs filed with the Director of Internal Revenue, Portsmouth, New Hampshire, a claim for refund on Form 843 of income taxes for the calendar year 1953 in the amount of $8,281.26 with interest as provided by law.
22. More than six months have elapsed since the said claim for refund was filed, and the Commissioner of Internal Revenue has taken no action thereon.
23. On May 8,1956, the Commissioner of Internal Revenue issued a statutory notice of deficiency in income tax for the calendar year 1953 of $1,729.75. The said deficiency, plus interest, was assessed against the taxpayers on September 10, 1956, and the said $1,729.75, together with interest of $349.80, was collected on August 1, 1957 by the Commissioner of Internal Revenue by credit of a portion of an overpayment of taxes for the year 1954 in the amount of $2,125.13.
CONCLUSION 03? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are entitled to recover, including interest as provided by law, and judgment will be entered to that effect. The amount of recovery will he determined pursuant to Ride 38 (c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on December 12,1958, that judgment for the plaintiffs be entered for $4,470.24, together with interest thereon as provided by law.