**Ermenegildo CESARINI et al., Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**No. C 67–65.**

United States District Court
N. D. Ohio, W. D.

Feb. 17, 1969.

Murray & Murray, Sandusky, Ohio, for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., David A. Wilson, Jr. and Daniel L. Power,

Dept. of Justice, Washington, D. C., for defendant.

YOUNG, District Judge.

This is an action by the plaintiffs as taxpayers for the recovery of income tax payments made in the calendar year 1964. Plaintiffs contend that the amount of $836.51 was erroneously overpaid by them in 1964, and that they are entitled to a refund in that amount, together with the statutory interest from October 13, 1965, the date which they made their claim upon the Internal Revenue Service for the refund.

Plaintiffs and the United States have stipulated to the material facts in the case, and the matter is before the Court for final decision. The facts necessary for a resolution of the issues raised should perhaps be briefly stated before the Court proceeds to a determination of the matter. Plaintiffs are husband and wife, and live within the jurisdiction of the United States District Court for the Northern District of Ohio. In 1957, the plaintiffs purchased a used piano at an auction sale for approximately $15.00, and the piano was used by their daughter for piano lessons. In 1964, while cleaning the piano, plaintiffs discovered the sum of $4,467.00 in old currency, and since have retained the piano instead of discarding it as previously planned. Being unable to ascertain who put the money there, plaintiffs exchanged the old currency for new at a bank, and reported the sum of $4,467.00 on their 1964 joint income tax return as ordinary income from other sources. On October 18, 1965, plaintiffs filed an amended return with the District Director of Internal Revenue in Cleveland, Ohio, this second return eliminating the sum of $4,-467.00 from the gross income computation, and requesting a refund in the amount of $836.51, the amount allegedly overpaid as a result of the former inclusion of $4,467.00 in the original return for the calendar year of 1964. On January 18, 1966, the Commissioner of Internal Revenue rejected taxpayers' refund claim in its entirety, and plaintiffs filed the instant action in March of 1967.

Plaintiffs make three alternative contentions in support of their claim that the sum of $836.51 should be refunded to them. First, that the $4,467.00 found in the piano is not includable in gross income under Section 61 of the Internal Revenue Code. (26 U.S.C. § 61) Secondly, even if the retention of the cash constitutes a realization of ordinary income under Section 61, it was due and owing in the year the piano was purchased, 1957, and by 1964, the statute of limitations provided by 26 U.S.C. § 6501 had elapsed. And thirdly, that if the treasure trove money is gross income for the year 1964, it was entitled to capital gains treatment under Section 1221 of Title 26. The Government, by its answer and its trial brief, asserts that the amount found in the piano is includable in gross income under Section 61(a) of Title 26, U.S.C., that the money is taxable in the year it was actually found, 1964, and that the sum is properly taxable at ordinary income rates, not being entitled to capital gains treatment under 26 U.S.C. §§ 1201 et seq.

After a consideration of the pertinent provisions of the Internal Revenue Code, Treasury Regulations, Revenue Rulings, and decisional law in the area, this Court has concluded that the taxpayers are not entitled to a refund of the amount requested, nor are they entitled to capital gains treatment on the income item at issue.

The starting point in determining whether an item is to be included in gross income is, of course, Section 61(a) of Title 26 U.S.C., and that section provides in part:

"Except as otherwise provided in this subtitle, *gross income means all income from whatever source derived,* including (but not limited to) the following items: * * * " (Emphasis added.)

Subsections (1) through (15) of Section 61(a) then go on to list fifteen items specifically included in the computation

of the taxpayer's gross income, and Part II of Subchapter B of the 1954 Code (Sections 71 *et seq.*) deals with other items expressly included in gross income. While neither of these listings expressly includes the type of income which is at issue in the case at bar, Part III of Subchapter B (Sections 101 *et seq.*) deals with items specifically *excluded* from gross income, and found money is not listed in those sections either. This absence of express mention in any of the code sections necessitates a return to the "all income from whatever source" language of Section 61(a) of the code, and the express statement there that gross income is "not limited to" the following fifteen examples. Section 1.61–1(a) of the Treasury Regulations, the corresponding section to Section 61(a) in the 1954 Code, reiterates this broad construction of gross income, providing in part:

> "Gross income means all income from whatever source derived, unless excluded by law. *Gross income includes income realized in any form,* whether in money, property, or services. * * *" (Emphasis added.)

The decisions of the United States Supreme Court have frequently stated that this broad all-inclusive language was used by Congress to exert the full measure of its taxing power under the Sixteenth Amendment to the United States Constitution. Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 429, 75 S.Ct. 473, 99 L.Ed. 483 (1955); Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788 (1940); Helvering v. Midland Mutual Life Ins. Co., 300 U.S. 216, 223, 57 S.Ct. 423, 81 L.Ed. 612 (1937); Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3 (1935); Irwin v. Gavit, 268 U.S. 161, 166, 45 S.Ct. 475, 69 L.Ed. 897 (1925).

In addition, the Government in the instant case cites and relies upon an I.R.S. Revenue Ruling which is undeniably on point:

> "The finder of treasure-trove is in receipt of taxable income, for Federal income tax purposes, to the extent of its value in United States currency, for

the taxable year in which it is reduced to undisputed possession." Rev.Rul. 61, 1953–1, Cum.Bull. 17.

■ The plaintiffs argue that the above ruling does not control this case for two reasons. The first is that subsequent to the Ruling's pronouncement in 1953, Congress enacted Sections 74 and 102 of the 1954 Code, § 74 expressly *including* the value of prizes and awards in gross income in most cases, and § 102 specifically *exempting* the value of gifts received from gross income. From this, it is argued that Section 74 was added because prizes might otherwise be construed as non-taxable gifts, and since no such section was passed expressly taxing treasure-trove, it is therefore a gift which is non-taxable under Section 102. This line of reasoning overlooks the statutory scheme previously alluded to, whereby income from all sources is taxed unless the taxpayer can point to an express exemption. Not only have the taxpayers failed to list a specific exclusion in the instant case, but also the Government *has* pointed to express language covering the found money, even though it would not be required to do so under the broad language of Section 61(a) and the foregoing Supreme Court decisions interpreting it.

The second argument of the taxpayers in support of their contention that Rev. Rul. 61, 1953–1 should not be applied in this case is based upon the decision of Dougherty v. Commissioner, 10 T.C.M. 320, P–H Memo. T.C., ¶ 51,093 (1951). In that case the petitioner was an individual who had never filed an income tax return, and the Commissioner was attempting to determine his gross income by the so-called "net worth" method. Dougherty had a substantial increase in his net worth, and attempted to partially explain away his lack of reporting it by claiming that he had found $31,000.00 in cash inside a used chair he had purchased in 1947. The Tax Court's opinion deals primarily with the factual question of whether or not Dougherty actually *did* find this money in a chair, finally concluding that he did not, and from this

petitioners in the instant case argue that if such found money is clearly gross income, the Tax Court would not have reached the fact question, but merely included the $31,000.00 as a matter of law. Petitioners argue that since the Tax Court did not include the sum in Dougherty's gross income until they had found as a fact that it *was not* treasure trove, then by implication such discovered money is not taxable. This argument must fail for two reasons. First, the *Dougherty* decision precedes Rev.Rul. 61, 1953–1 by two years, and thus was dealing with what then was an uncharted area of the gross income provisions of the Code. Secondly, the case cannot be read as authority for the proposition that treasure trove is not includable in gross income, even if the revenue ruling had not been issued two years later.[1]

In partial summary, then, the arguments of the taxpayers which attempt to avoid the application of Rev.Rul. 61, 1953–1 are not well taken. The *Dougherty* case simply does not hold one way or another on the problem before this Court, and therefore petitioners' reliance upon it is misplaced. The other branch of their argument, that found money must be construed to be a gift under Section 102 of the 1954 Code since it is not expressly included as are prizes in Section 74 of the Code, would not even be effective were it being urged at a time prior to 1953, when the ruling had not yet been promulgated. In addition to the numerous cases in the Supreme Court which uphold the broad sweeping construction of Section 61(a) found in Treas.Reg. § 1.61–1(a), other courts and commentators writing at a point in time before the ruling came down took the position that windfalls, including found monies, were properly includable in gross income under Section 22(a) of the 1939 Code, the predecessor of Section 61(a) in the 1954 Code. See, for example, the decision in Park & Tilford Distillers Corp. v. United States, 107 F.Supp. 941, 123 Ct.Cl. 509 (1952);[2] and Comment, "Taxation of Found Property and Other Windfalls," 20 U.Chi.L.Rev. 748, 752 (1953).[3] While it is generally true that revenue rulings may be disregarded by the courts if in conflict with the code and

1. The Dougherty Court, after carefully considering the evidence before it on the factual question of whether or not the taxpayer actually found the $31,000.00 as claimed, stated:

"In short, we do not believe the money was in the chair when the chair was acquired by the petitioner.

"Where the petitioner got the money which he later took from the chair and in what manner it was obtained by him, we do not know. It is accordingly impossible for us to conclude and hold the $31,000 here in question was not acquired by him in a manner such as would make it income to him within the meaning of the statute. Such being the case, *we do not reach the question whether money, if acquired in the manner claimed by the petitioner, is income under the statute.*" (Emphasis added.) 10 T.C.M. 320 at 323. (1951)

2. In this taxpayer's suit for a refund of corporation taxes, Judge Madden of the Court of Claims stated at pages 943–944: " * * * It is not, and we think could not rationally be, suggested that Congress lacks the power to tax windfalls as income. * * * A windfall may, of course, be a gift, and thus expressly exempt from income tax. But if, as in the instant case, the windfall is clearly not a gift, but a payment required by a statute * * * we do not see how its exemption could be reconciled with the reiterated statements that Congress intended, by Section 22(a), to tax income to the extent of its constitutional power." 107 F.Supp. at 943, 944.

3. This article, after stating arguments both ways on the question, and thus suggesting by implication that the area was not clearly defined at that time, went on to state at page 752: "Perhaps a more appropriate interpretation of Section 22(a) would be to hold that all windfalls * * * are taxable income under its sweeping language. * * * Insofar as the policy of Section 22(a) is to impose similar tax burdens on persons in similar circumstances, there is no basis for distinguishing value received as windfall and * * * value received as salary." Footnote 50 of the Comment indicates that the article was in printing when Rev.Rul. 61–53–1 came out.

the regulations, or with other judicial decisions, plaintiffs in the instant case have been unable to point to any inconsistency between the gross income sections of the code, the interpretation of them by the regulations and the courts, and the revenue ruling which they herein attack as inapplicable. On the other hand, the United States *has* shown a consistency in letter and spirit between the ruling and the code, regulations, and court decisions.

Although not cited by either party, and noticeably absent from the Government's brief, the following Treasury Regulation appears in the 1964 Regulations, the year of the return in dispute:

> "§ 1.61–14 Miscellaneous items of gross income.
>
> "(a) In general. In addition to the items enumerated in section 61(a), there are many other kinds of gross income * * *. *Treasure trove, to the extent of its value in United States currency, constitutes gross income for the taxable year in which it is reduced to undisputed possession.*" (Emphasis added.)

Identical language appears in the 1968 Treasury Regulations, and is found in all previous years back to 1958. This language is the same in all material respects as that found in Rev.Rul. 61–53–1, Cum. Bull. 17, and is undoubtedly an attempt to codify that ruling into the Regulations which apply to the 1954 Code. This Court is of the opinion that Treas.Reg. § 1.61–14(a) is dispositive of the major issue in this case if the $4,467.00 found in the piano was "reduced to undisputed possession" in the year petitioners reported it, for this Regulation was applicable to returns filed in the calendar year of 1964.

■ This brings the Court to the second contention of the plaintiffs: that if any tax was due, it was in 1957 when the piano was purchased, and by 1964 the

Government was blocked from collecting it by reason of the statute of limitations. Without reaching the question of whether the voluntary payment in 1964 constituted a *waiver* on the part of the taxpayers, this Court finds that the $4,467.00 sum was properly included in gross income for the calendar year of 1964. Problems of when title vests, or when possession is complete in the field of federal taxation, in the absence of definitive federal legislation on the subject, are ordinarily determined by reference to the law of the state in which the taxpayer resides, or where the property around which the dispute centers is located. Since both the taxpayers and the property in question are found within the State of Ohio, Ohio law must govern as to when the found money was "reduced to undisputed possession" within the meaning of Treas. Reg. § 1.61–14 and Rev.Rul. 61–53–1, Cum.Bull. 17.

■ In Ohio, there is no statute specifically dealing with the rights of owners and finders of treasure trove, and in the absence of such a statute the common-law rule of England applies, so that "title belongs to the finder as against all the world except the true owner." Niederlehner v. Weatherly, 78 Ohio App. 263, 69 N.E.2d 787 (1946), appeal dismissed, 146 Ohio St. 697, 67 N.E.2d 713 (1946). The *Niederlehner* case held, *inter alia*, that the owner of real estate upon which money is found does not have title as against the finder. Therefore, in the instant case if plaintiffs had resold the piano in 1958, not knowing of the money within it, they later would not be able to succeed in an action against the purchaser who *did* discover it. Under Ohio law, the plaintiffs must have actually *found* the money to have superior title over all but the true owner, and they did not discover the old currency until 1964. Unless there is present a specific state statute to the contrary,[4]

---

4. See, for example, United States v. Peter, 178 F.Supp. 854 (E.D.La.1959) where it is held that under the Louisiana Civil Code and the Code D'Napolean the

finder of treasure does not own it, and can only become the owner if no one else can prove that the treasure is his property.

the majority of jurisdictions are in accord with the Ohio rule.[5] Therefore, this Court finds that the $4,467.00 in old currency was not "reduced to undisputed possession" until its actual discovery in 1964, and thus the United States was not barred by the statute of limitations from collecting the $836.51 in tax during that year.

Finally, plaintiffs' contention that they are entitled to capital gains treatment upon the discovered money must be rejected. While the broad definition of "capital asset" in Section 1221 of Title 26 would on its face cover both the piano and the currency, Section 1222 (3) defines long-term capital gains as those resulting from the "sale or exchange of a capital asset held for more than 6 months." Aside from the fact that the piano for which plaintiffs paid $15.00 and the $4,467.00 in currency found within it are economically dissimilar, neither the piano nor the currency have been sold or exchanged. The benefits of capital gains treatment in the taxing statutes are not allowed to flow to *every* gain growing out of a transaction concerning capital assets, but only to gains from the "sale or exchange" of capital assets, Dobson v. Commissioner of Internal Revenue, 321 U.S. 231, 64 S.Ct. 495, 88 L.Ed. 691 (1944) and the terms "sale" and "exchange" are to be given ordinary meaning in determining whether capital gains treatment is proper. Pounds v. United States, 372 F.2d 342 (5th Cir. 1967). It has been held that a "sale" in the ordinary sense of the word is a transfer of property for a fixed price in money or its equivalent. Grinnell Corp. v. United States, 390 F.2d 932 (Ct.Cl.1968). Applying the ordinary meaning of the words sale or exchange to the facts of this case, it is readily apparent that neither transaction has occurred, the plaintiffs not having sold or exchanged the piano or the money. They are therefore not entitled to capital gains

treatment on the $4,467.00 found inside the piano, but instead incurred tax liability for the sum at ordinary income rates. Since it appears to the Court that the income tax on these taxpayers' gross income for the calendar year of 1964 has been properly assessed and paid, this taxpayers' suit for a refund in the amount of $836.51 must be dismissed, and judgment entered for the United States. An order will be entered accordingly.

---

5. See Weeks v. Hackett, 104 Me. 264, 71 A. 858, 860 (1908) for a review of the authorities in jurisdictions where the finder is the owner as against all but the true owner. Also, see Finding Lost Goods 36A C.J.S. § 5, p. 422 (1961).